## Western Penna. Gas Co., Appellant, *v.* George.

*Lease—Oil lease—Rental—Forfeiture.*

An oil lease, " for the purpose of drilling and operating for oil and gas," provided that the lessee should hold the leased premises during the term of two years from the date thereof, and as much longer as oil and gas were found in paying quantities or the rental paid thereon. The lessor was to receive one eighth of the oil produced and five hundred dollars per annum for each well from which gas should be obtained in paying quantities, and so long as it should be sold therefrom. The lease further provided that the lessee should commence a well within thirty days and complete it within ninety days, " or in default thereof pay to the party of the first part for further delay an annual rental of sixty dollars payable quarterly in advance on the premises from the time above specified for completing a well, until such well shall be completed. A failure to complete such well or pay said rental within the time specified or within ten days thereafter shall render this lease null and void." *Held* that the failure of the lessee to complete a well within the term of two years enabled the lessor to terminate the lease on the expiration of it, and that the lessee could not indefinitely continue the lease by payment of sixty dollars per annum after the expiration of the two years.

Argued Oct. 19, 1893. Appeal, No. 273, Oct. T., 1893, by plaintiff, from judgment of C. P. Washington Co., May T., 1893, No. 49, for defendant, Robert S. George, on trial by court without jury. Before WILLIAMS, MCCOLLUM, MITCHELL, DEAN and THOMPSON, JJ. Affirmed.

Ejectment to determine right of plaintiff to oil and gas under tract of land. Before MCILVAINE, P. J.

The material portions of the lease between defendant and D. J. Sterling, plaintiff's assignor, upon which the action was based, were as follows:

" The said party of the first part, for and in consideration of the agreements hereinafter mentioned, has granted, demised and let unto the party of the second part for the purpose and with the exclusive right of drilling and operating for petroleum, oil and gas, all that certain tract of land situate in Mount Pleasant township, Washington county and state of Pennsylvania, bounded and described as follows, to wit :

" North by lands of Logan ; East by lands of McCarty Bros. ; South by lands of Public Road ; West by lands of Robert Far-

rer, containing sixty acres, be the same more or less.   Togeth-
er with the right of way over said premises to the places of
operating, the right to lay pipes to convey water, oil and gas,.
and the right to remove any machinery or fixtures placed on
said premises by the party of the second part.

"The party of the second part to have and to hold the said
premises for and during the term of two years from the date
hereof, and as much longer as oil or gas is found in paying
quantities or the rental paid thereon.

"In consideration of said grant and demise the said party of
the second part agrees to give or pay to the said party of the
first part, the full equal one eighth part of all the oil produced
or saved from the premises, and to deliver the same free of ex-
pense into tanks or pipe lines to the credit of the first party.
And should gas be found in sufficient quantities to justify
marketing the same, the consideration in full to the party of
the first part, shall be five hundred dollars, per annum, for the
gas from each well so long as it shall be sold therefrom, and
gas free of cost for household use on the premises, in dwelling
house.

"It is agreed that there shall be no wells drilled within two
hundred feet of the buildings now on the premises without the
consent of the first party.   The first party shall fully use and
enjoy said premises for farming purposes except such part as
may be necessary for said operations.   The said second party
agrees to so locate all wells as to do as little damage as possi-
ble to the land, and to pay for all damage done, at an appraised
valuation, also to pay all increase in the taxation of said land
caused by the operations of said second party.

"It is further agreed that the party of the second part shall
commence a well on the above described premises, within thirty
days from the date above, and compleat within ninety days, or
in default thereof pay to the party of the first part for further
delay a annually rental of sixty dollars payable quarterly in
advance on the said premises from the time above specified for
compleating a well until such well shall be compleated, the
said rental shall be deposited to the credit of the party of the
first part at 5th Avenue Dimond National Bank of Pittsburgh,
or be paid direct to said first party.   And a failure to compleat
such well, or to pay said rental within time above specified

therefor, or within ten days thereafter, shal render this lease null and void, and the same can then be renewed, extended or continued in force, only by the mutual consent of the parties of both parts. It shall be optional with the lessee at any time, either to drill the said well, to pay the said rental or to forfeit and surrender this lease and upon his executing and tendering to the lessor at any time a proper surrender or release thereof, all the rights, obligations and liabilities of the respective parties under this lease shall thereupon cease and determine and thenceforth shall be and remain null and void. And further it is agreed to that if the first well drilled on this land produce oil in quantities yielding forty barrels for thirty consecutive days, then party of second to compleat and additional well within ninety days thereafter unavoidable accidents or delays excepted, and further to protect said land from any undue drainage done by well drilled upon adjoining land, party of first to have five days notice before 1st well is located."

The following opinion in part was filed by McILVAINE, P. J.:

## "CONCLUSIONS OF LAW.

"1. In construing the lease upon which the plaintiff relies as evidence of its title, the purpose of the lease must be kept in view, and no construction should be given thereto which would thwart that purpose.

"2. The defendant's land was leased for 'the purpose of drilling and operating for petroleum oil and gas.'

"3. The lessee's covenant to commence a well in thirty days and complete it in ninety days is a principal covenant, and the covenant to pay the annual rental, if there is further delay in commencing and completing the first well, is secondary and is intended as a spur to compel the performance of the principal covenant.

"4. To hold that the lessee can have and hold the premises for and during the term of two years and as much longer as the sixty dollars annual rental is paid thereon, is to convert the lease into a perpetual option to drill for oil and gas, when the apparent purpose of the lessor was to compel the development of his land within the period of two years.

"5. The words 'or rental paid thereon' in the habendum clause of the lease apply to the time during which the lessee

could hold the lease (by payment of the rentals) without drill-ing, and that time, by the terms of the lease, is fixed at two years. If we ask the question, how much longer than two years shall the lessee hold the premises, we find the answer in the words ' and as much longer as oil and gas is found in pay-ing quantities.' Stated negatively the lessee shall not have and hold the premises longer than two years unless oil and gas is found within two years in paying quantities, and he cannot hold it even two years without operating unless ' the rentals are paid thereon.' In other words, the lessee can hold the prem-ises two years without oil and gas, if he commences a well in thirty days and finishes it in ninety days, ' or the rental is paid thereon.' But if oil or gas is found within the two years, he can hold it not only for the two years but as much longer as oil or gas continue to be found or produced in paying quantities.

" 6. [Neither the lessee nor his assignee, the plaintiff, having entered upon the leased premises for the purpose of drilling for oil and gas during the term of two years, which ended on July 16, 1892, the lease by its own terms terminated and the plaintiff is not entitled to recover in this action. And if no exceptions are filed to this decision, as provided by the act of April 27, 1874, P. L. 109, judgment will be entered against the plaintiff and in favor of the defendant for the land described in the plaintiff's præcipe, and costs.] " [1]

Exceptions dismissed and judgment for defendant.

*Errors assigned* were dismissal of exceptions, quoting them.

*A. M. Todd, J. M. Wiley* with him, for appellant.—In the interpretation of all written contracts the endeavor should be, not to ascertain what either party may have desired to accom-plish, but the common ground on which the minds of both the contracting parties met when the contract was made; and, if the court below concluded that the language required in-terpretation, it should have given that which was most favor-able to the lessee rather than the lessor: Klaer v. Ridgway, 86 Pa. 529; Cromwell v. Selden, 3 N. Y. 256; Tourtellot v. Phelps, 4 Gray, 374; White v. Smith, 33 Pa. 186.

There is nothing repugnant to law in giving the language of this lease its natural and ordinary interpretation and thus cre-

ating a term of two years certain, with the option in the lessee to continue it indefinitely. Such leases have been sustained by this court heretofore and are recognized as binding on the lessor: Lewis v. Effinger, 30 Pa. 251; Effinger v. Lewis, 32 Pa. 367; Com. v. McNeile, 8 Phila. 438; Myers v. Kingston Coal Co., 126 Pa. 562.

*David Sterrett, J. F. McFarland* and *John B. Chapman* with him, for appellee.—The lease in this case is not a grant of property in the oil, but merely a grant of possession for the purpose of searching for and procuring oil; and the lessee holds his right subject to the obligation to make search, and also subject to the loss of his rights by abandonment: Barnhart v. Lockwood, 152 Pa. 82; Venture Oil Co. v. Fretts, 152 Pa. 451.

The plaintiff had no title to a leasehold estate in the land for want of entry: Sennett v. Bucher, 3 P. & W. 392. The lease is of the same character with the lease in the case of Venture Oil Company v. Fretts, 152 Pa. 451, wherein an oil lease, before entry and successful search for oil, is distinguished from a vested legal title.

OPINION BY MR. JUSTICE McCOLLUM, April 9, 1894:

The land described in the summons was leased for "the purpose of drilling and operating for petroleum, oil and gas." The lease was for a term of two years, and it contained a provision for its continuance for a longer period on certain conditions which will be hereinafter considered. The lessor, in consideration of the right granted to the lessee, was to receive from the latter one eighth of the oil produced from the premises, and five hundred dollars per annum for each well from which gas should be obtained in paying quantities, and so long as it should be sold therefrom. The lessee was to commence a well on the premises within thirty days and to complete it within ninety days from the date of the lease, and in case of his failure to do so, he was to pay to the lessor sixty dollars per annum quarterly in advance. This sum was called a rental, but it was in the nature of a penalty for the lessee's default in the performance of his covenant to commence and continue operations in execution of the purpose expressed in the lease. It was not a sum to be paid quarterly in advance to the lessor after the develop-

ment of the property and while he was receiving one eighth of the oil produced therefrom, or the rent from the gas wells drilled thereon. It was manifestly intended to hasten the performance of the lessee's covenant to drill the well, and whether it is called a rental, a penalty for the lessee's default, or compensation to the lessor for the delay occasioned by it, is of no consequence. The lessor could not exact it beyond the period covered by the lessee's default, because, after the covenants of the latter in respect to the development of the property were performed, there could be no accruing rental under this provision of the lease.

The appellant company has succeeded, by assignment, to the rights and obligations of the lessee, and its contention is that it may continue the lease in full force so long as it pays or tenders to the lessor quarterly in advance the sum of fifteen dollars. In other words it claims to have the right, on payment of this comparatively insignificant rental or penalty, to postpone indefinitely all operations for the development of the property, and thus defeat the expressed purpose of the parties and render inoperative the principal covenants of its assignor. This is an extraordinary claim, and it is based on a construction which makes the lease a mere option and the so-called rental the price of it. The five words relied on to accomplish this result are found in and conclude the habendum clause of the agreement. The learned judge of the common pleas thought these words did not warrant the construction contended for; and that they were applicable only to the definite term of two years within which it was manifestly intended by the parties that the property should be developed. He therefore held that the failure of the lessee and his successor to complete a well upon the premises within that term enabled the lessor to terminate the lease on the expiration of it, and in this conclusion we concur. A provision obviously designed to hasten the development of the property should not be allowed to prevent such development, if it admits of a construction which harmonizes with the other provisions of the agreement and gives effect to the controlling intention of the parties to it.

The continuance of the lease beyond the definite term was contingent upon the finding of oil or gas in paying quantities, and on the payment to the lessor in such case of his share of

the oil produced, or the stipulated sum for each well from which gas was obtained and sold. The primary and essential condition to any extension of the lease after the lapse of two years from its date was the finding of oil or gas in paying quantities within that time, and the secondary condition was that the rent reserved for the oil or gas found should be paid in conformity with the covenants in relation thereto. If we were at liberty to substitute " and " for " or " in the concluding words of the habendum clause, as we might well do if we were construing a will or statute, there would be no room nor basis for the appellant's contention, because, on such substitution, the rental mentioned therein would plainly refer to that which the lessor would be entitled to receive after the development of the property and while oil or gas was found thereon in paying quantities. But fortunately the lease as written fairly admits of a construction which gives effect to all of its provisions and to the intention of the contracting parties. This construction was adopted by the learned judge of the common pleas and it referred the rental mentioned in the habendum clause to the definite term of two years, within which it was possible for the lessee to continue the lease, without commencing operations thereunder, by paying the rental or penalty prescribed for his delay in the performance of his covenant to drill a well on the premises.

We are satisfied that the construction placed on the lease in the court below was fully warranted by its provisions and the dominating purpose of the parties to it. We therefore overrule the specifications of error.

Judgment affirmed.