### TEXAS PACIFIC COAL & OIL CO. v. BRATTON. (No. 9662.)

(Court of Civil Appeals of Texas. Fort Worth. June 18, 1921. Rehearing Denied Dec. 24, 1921.)

1. Mines and minerals ⬤78(2)—Lessor seeking to cancel lease held required to show right thereto by express language of lease or words clearly implied.

Where the cancellation of an oil lease sought by lessor is a forfeiture of all expected benefits from a vast amount of work and money expended by lessee in good faith, in an effort to develop the lease, in the fruits of which development lessor would share, lessor to be entitled to relief must show his right thereto by its express language or by words clearly implied therefrom.

2. Mines and minerals ⬤78(2)—Where all rentals paid, held drilling of well and discovery of oil necessary only as basis for continuance of lease.

Where all rentals necessary to keep a lease in force during a five-year period are paid as provided therein, drilling a well and discovery of oil is necessary only as a basis for its continuance after such period pursuant to a lease provision therefor in case of discovery.

3. Mines and minerals ⬤75—Lessee held to have discovered oil within literal and exact meaning of term in provision for continuance of lease.

Where it appears by testimony that one well on leased premises produced 140 barrels in a few days when it was stopped by casing falling into it, and that it was capable of pro-

---

ducing 65 barrels per day, and that 5 barrels were bailed from another when lessor stopped work by notice to terminate the lease, it was *held* that lessee "discovered" oil within the literal and exact meaning of the term in a provision for continuance of the lease in that event.

**4. Mines and minerals ☞78(1)—Discovery of oil provided for in lease as predicate for continuance held clear and unambiguous, so that production in paying quantities could not be implied as a substitute.**

The predicate for the continuation of an oil lease after a five-year period, stated to be the "discovery" of oil during such, is clear and unambiguous, and "the production of oil in paying quantities" could not be implied and read into the lease as a substitute therefor.

**5. Mines and minerals ☞75—Under continuance clause in lease, held discovery of oil during term with reasonable prospects for further successful development entitled lessee to a reasonable time to continue work after term.**

Under a lease for five years, providing that in case oil is discovered the lease should continue in force as long as oil is produced in paying quantities, discovery during the term with reasonable prospects of further successful development entitled the lessee to a reasonable time within which to continue development work after the term.

**6. Mines and minerals ☞75—Lessor stopping work at end of term not entitled to complain that lessee did not continue efforts so as to continue lease.**

Where lessor stops work at the end of the term and thereafter prevents further operations, he cannot complain that lessee did not continue his efforts to produce oil in paying quantities pursuant to a provision for continuance of the lease.

**7. Mines and minerals ☞78(7)—Evidence held to show lessee in good faith believed he was producing oil in paying quantities and intended to increase production.**

Evidence *held* to show that, when lessor stopped work, lessee in good faith believed oil was being produced in paying quantities from a well with reasonable prospects for further increase, which he likewise in good faith intended to bring about by further development work.

Appeal from District Court, Stephens County; W. R. Ely, Judge.

Suit to cancel lease by J. H. Bratton against the Texas Pacific Coal & Oil Company. From judgment for plaintiff, defendant appeals. Reversed and rendered.

W. J. Oxford, of Stephenville, and John Hancock and W. B. Powell, both of Fort Worth, for appellant.

John F. Evans, of Breckenridge, R. B. Cousins, Jr., of Strawn, J. W. Hill, of Breckenridge, Ben L. Cox, of Abilene, and Cockrell, McBride & O'Donnell, of Dallas, for appellee.

DUNKLIN, J. On January 18, 1915, W. H. Nolan executed to the Texas & Pacific Coal Company an oil and gas lease on a tract of land in Stephens county. The lease recited a cash consideration paid of $207.75 and contained a stipulation that it should continue in force for a period of five years upon condition that the lessee should pay an annual ground rental, in advance, of $207.75; the first payment to be made on or before the beginning of the second year, and the remaining payments to be made sucessively on or before the beginning of each year thereafter. The lease contained this further stipulation:

"It is further agreed between the parties hereto that in case either gas, petroleum, coal or other mineral substances are discovered on said premises that this lease should continue in force and effect so long as any of these is produced in paying quantities."

The lease further stipulated that it should be assignable in whole or in part, subject to its conditions and stipulations.

J. H. Bratton purchased title to the land from W. H. Nolan, the lessor, and as owner thereof instituted this suit against the Texas Pacific Coal & Oil Company, successor to the Texas & Pacific Coal Company, original lessee, and other persons claiming an interest in said lease and in the title to said land, to cancel the lease, and, from a judgment awarding plaintiff that relief, the defendant Texas Pacific Coal & Oil Company and its codefendant, G. W. Watson, have prosecuted this appeal.

The five years' period provided for in the lease expired at midnight on January 18, 1920. The grounds alleged in plaintiff's petition for a cancellation of the lease were as follows:

"Plaintiff further represents that neither the defendant the Texas Pacific Coal & Oil Company, nor any one for it, was producing natural gas, petroleum coal, or other mineral substances in paying quantities from said land at the time of the expiration of said lease, and represents that neither the defendant the Texas Pacific Coal & Oil Company, nor any one for it, has ever produced any of the above-described minerals or any other minerals from said land in paying quantities; and plaintiff further represents that at the time of the expiration and termination of said lease neither the said defendant, nor any one for it, was producing any of the above-described minerals from said land in any quantities whatever; and plaintiff represents further that neither the defendant the Texas Pacific Coal & Oil Company, nor any one else for it, has produced oil or gas or any of the above-described minerals, or any other minerals, from said land in paying quantities since the night of January 17, 1920, at 12 o'clock, the time of expiration of said lease, and that, by reason of the facts above alleged, said lease has terminated and expired and become null and void, and of no further force and effect."

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The record shows that all of the rentals provided for in the lease necessary to keep the same alive for the full period of five years, without the necessity of drilling any wells, were paid. Early in the year 1919, the lessee began a well on the land and finished it in May or June of that year. That well was drilled to a depth of about 3,800 feet. Oil was discovered in the well to the extent that it flowed by heads, lasting a few minutes each, and then it was pumped. It was connected with a tank, and the flow from the well went into the tank. Owing to unexpected accidents, such as losing the casing in the well, necessitating fishing therefor, there was a cessation of production for several months. But the lessee continued work on the well to overcome the obstructions up to December, 1919. After the well ceased to flow, a pump was installed, by means of which oil was produced from the well for a short period of time. That well was known as well No. 1. V. M. Calvert, district superintendent of the lessee, testified as follows:

"When we were pumping well No. 1, I said that the first day we pumped 116 barrels, and the next day, eight hours' pumping, and pumped 16 barrels. The next day we pumped twelve hours and pumped 8 barrels."

He further testified:

"It is my judgment that that well could be made a paying well had we been able to have gone to the bottom of that well; I consider it would have been a paying well. The average wells in that country produce in the neighborhood of 55 barrels per day. That is, after they got over the flush production and settle down to production; that is, after they develop into a pumping well. That well made 140 barrels of oil according to my calculation. We saved that much oil and it was pumped into the tank. To the best of my recollection that oil at the time was worth $3 per barrel. It took two men to run this pump for the first 24 hours it was run. We have other witnesses, experienced oil men, who gave it as their opinion that the oil discovered in well No. 1 was in paying quantities."

According to the testimony of other witnesses, plaintiff, who was keeping in close touch with well No. 1, expressed satisfaction with it as being a good well, producing as much as 65 barrels per day, but that it had been stopped up by the casing which had dropped into it.

The lessee also began another well on the land in controversy during the first part of November, 1919. That well was known as well No. 2, and was drilled to a depth of 3,603 feet, when it was shot with nitroglycerine in order to bring in the oil, at 4 or 5 o'clock in the afternoon of January 18, 1920. As soon as it was shot, the drillers began bailing it and bailed several barrels of oil, which were emptied into the tank. The well needed swabbing and cleaning out, and the drillers were endeavoring to clean it. The work in so doing was interfered with by a considerable gas pressure in the well. At midnight of January 18, 1920, and while the drillers were so engaged, further work on the well was stopped by the plaintiff J. H. Bratton, who notified them that the lease had terminated. Thereafter, on January 19th, plaintiff sued out a writ of injunction, which was served on the lessee's agent on the following day, restraining further operations on said lease.

The following were some of the special issues submitted to the jury, with their findings thereon, to wit:

"Question 1. Was oil in paying quantities discovered in well No. 1?

"Question 2. How many barrels of oil, if any, were produced from well No. 1? Answer by stating in figures the number of barrels, if any, produced. Answer: 100 barrels.

"Question 3. If you answer questions 1 and 2 that oil was discovered and produced from well No. 1, then answer this question, did the Texas Pacific Coal & Oil Company, after said discovery and production, diligently operate said well and the drilling of well No. 2? Answer: No. 1 did not use due diligence. No. 2, yes.

"Question 4. Was oil discovered in paying quantities in well No. 2 before midnight of January 18, 1920? Answer: No.

"Question 5. How many barrels of oil, if any, were produced from well No. 2? Answer by stating the number, if any. Answer: Five barrels.

"Question 6. How many barrels of oil, if any, were standing in well No. 2 after it was shot and on and prior to midnight of January 18, 1920. Answer: Twenty-five barrels."

Appellee has cited several decisions of other states construing leases, stipulating that they should run for a certain period of time "and as much longer thereafter as oil and gas shall be found in paying quantities"; or, "so long thereafter as oil or gas shall be produced in paying quantities." According to those decisions, in order to continue the lease after the stated period of time it is necessary that oil be discovered in paying quantities in the first instance; and that it be produced in paying quantities, in the second instance, within the period of time fixed for the duration of the lease. The following are some of the decisions cited by appellee: Murdock-West Co. v. Logan, 69 Ohio St. 514, 69 N. E. 984 (Supreme Court of Ohio); Chaney v. Ohio & I. Oil Co., 32 Ind. App. 193, 69 N. E. 477; Northwestern Ohio Natural Gas Co. v. City of Tiffin, 59 Ohio St. 420, 54 N. E. 77; Western Pennsylvania Gas Co. v. George, 161 Pa. 47, 28 Atl. 1004. Those cases evidently proceed upon the theory that the language so quoted necessarily implies that oil must be discovered in paying quantities, or produced in paying quantities, during the term fixed by the lease.

[1] The cancellation of the lease sought by the plaintiff in the present suit is in the nature of a forfeiture of all expected benefits from the vast amount of work and money expended in good faith, by the lessee, in an effort to develop the lease, and in the fruits of which development plaintiff would share. In order to entitle him to the relief sought, it is incumbent upon the plaintiff to show clearly his right thereto by the express language of the lease, or by words clearly implied therefrom. Decker v. Kirlicks, 110 Tex. 90, 216 S. W. 385; McCallister v. Texas Co. (Tex. Civ. App.) 223 S. W. 859.

[2, 3] As all rentals necessary to keep the lease in force during the five years' period had been paid, the drilling of a well and the discovery of oil was necessary only as a basis for a continuation of the lease after the period of five years. Especially when the amount of oil actually produced from each of said wells is considered, it cannot be doubted that the lessee discovered oil within the five years' period stated in the lease, within the exact and literal meaning of the term "discovered."

[4] The predicate for a continuation of the lease after the five years' period having been stated to be simply the discovery of oil during the five years' period, another predicate, namely, "the production of oil in paying quantities," within the five years' period, cannot be implied and read into the lease as a substitute for, or qualification of, the predicate stated, which is clear and unambiguous. Nor was there any allegation in plaintiff's petition that oil in paying quantities could not be produced from the lease from and after the termination of the five years' period.

[5] Having discovered it in such quantities, and with reasonable prospects of further successful development, the lessee, in common fairness and justice, was entitled to a reasonable length of time within which to continue the development work in order to reap some reward for the labor and expenses incurred, which would also be attended with profit to the plaintiff. And such we believe to be a reasonable construction of the terms of the lease. The following authorities, cited by appellant, accord with these views, and some of them, at least, involved the construction of leases of similar terms to those of the lease in controversy in the present suit: Eastern Oil Co. v. Coulehan, 65 W. Va. 531, 64 S. E. 836; South Penn. Oil Co. v. Snodgrass, 71 W. Va. 438, 76 S. E. 961, 43 L. R. A. (N. S.) 848; Ohio Fuel Oil Co. v. Greenleaf, 84 W. Va. 67, 99 S. E. 274; Roach v. Junction Oil & Gas Co. (Okl. Sup.) 179 Pac. 934.

[6] It is to be noted that by his pleadings plaintiff did not base his right to cancellation upon an allegation that oil was not "discovered" within the five years' period, or that oil was not "discovered in paying quantities," within the five years' period, but upon the allegation that it was not produced in paying quantities during that period. In other words, his right of action for cancellation was based upon the contention that, according to the terms of the lease, in order to continue it in force after the termination of the five years' period, the lessee was required, not only to discover oil in paying quantities, but to produce it in paying quantities, before the expiration of the five years' period, and that as the lessee had failed to comply with the requirement the lease had terminated, even though the evidence should show, as it reasonably did tend to show, that the lessee might have produced oil in paying quantities immediately following the termination of the five years' period if further operations had not been forbidden by the plaintiff.

After plaintiff himself stopped further work on the lease at 12 o'clock on the night of January 18, 1920, the very minute the five years' term expired, and thereafter prevented further operations by the lessee, by writ of injunction he is in no position to complain that the lessee did not continue its efforts to produce oil thereafter. McCallister v. Texas Co. (Tex. Civ. App.) 223 S. W. 859, writ of error refused; Leonard v. Busch-Everett Co., 139 La. 1099, 72 South. 749; Consumers' Gas Trust Co. v. Ink, 163 Ind. 174, 71 N. E. 477. Nor did plaintiff's petition contain any allegations that the lessee had at any time abandoned the lease.

[7] Under our views of the proper construction to be given to the instrument in controversy, it is unnecessary to discuss further what is meant by the expression, "in paying quantities," as applied to the production or discovery of oil. But we will refer briefly to the decision of this court in an opinion by Associate Justice Buck in the case of Texas Pacific Coal & Oil Co. v. Bruce (decided April 16, 1921) 233 S. W. 535, not yet [officially] published, in which it is pointed out that that expression means in paying quantities to the lessee, to be determined by him in the exercise of good faith. And the evidence seems to establish conclusively that at the time plaintiff stopped the work the lessee, in good faith, believed that oil was being produced in paying quantities from well No. 2, with reasonable prospects for a further increase in that production, which the lessee likewise, in good faith, intended to bring about by further development work.

For the reasons noted, the judgment of the trial court, canceling the lease in controversy, is reversed, and judgment is here rendered denying his prayer for cancellation.

On Motion for Rehearing.

In the opinion of this cause on original hearing, we overlooked the issues between the appellee J. H. Bratton and the appellant

George J. Watson, to which our attention is now called by Watson's motion for rehearing, and those issues will now be disposed of.

W. H. Nolan was the source of J. H. Bratton's title and also of the title claimed by George J. Watson. In the deed from Nolan to J. H. Bratton title to the land in controversy was conveyed, but in that deed there was a reservation and exception from the conveyance of "an undivided three-fourths of an undivided one-eighth in and to all of the natural gas, oil, petroleum and other mineral substances, in, on and under said above-described tract of land heretofore sold and conveyed to me." That deed conveyed the only title claimed by appellee J. H. Bratton; in other words, J. H. Bratton never thereafter, or at any time, acquired an interest in the land so reserved and excepted in the said deed. After the execution of that deed, W. H. Nolan executed two deeds of conveyance to George J. Watson, the first dated April 29, 1918, by the terms of which Watson acquired "an undivided one-half interest in and to all the royalties in oil, gas and other minerals in and under the land" in controversy. On September 23, 1919, Nolan executed another deed to Watson, by the terms of which he conveyed to Watson "an undivided one-half interest in and to all of the oil, gas and other minerals in and under the land" in controversy, together with "the right and privilege of the grantee to participate in all sums as may be paid by any and all holders of leases for oil and gas for rentals, renewals, extensions, bonuses, and the same right as any leases hereafter made for oil, gas or other minerals or mineral purposes." That deed contained a recital that it was given in lieu of the former deed to Watson. Thus the record shows title in Watson to an undivided one-half interest in and to all the natural gas, oil, petroleum, and other mineral substances in, on, and under the land in controversy. The fact that the first deed to Watson was a conveyance of only one-half interest in and to all the royalties in the oil, gas, and other minerals in the land makes no difference, since he afterwards acquired the same interest in the minerals themselves as distinguished from a mere royalty. And in the meantime Bratton had not acquired that interest, nor has he acquired such interest at any other time. Appellee J. H. Bratton was the plaintiff in the suit, which was a suit in trespass to try title as against Watson, and the burden was upon him to show title to the interest which was vested in Watson by Watson's second deed. This burden plaintiff wholly failed to discharge.

When the deed to Bratton was executed, there was already outstanding the oil lease to the Texas Pacific Coal & Oil Company, by the terms of which seven-eighths of the oil and other minerals had been conveyed to the lessee upon the conditions therein expressed, and only one-eighth of such minerals had been reserved by Nolan. One-fourth of that one-eighth, together with one-fourth of the royalties to accrue under the lease, of course belonged to Bratton. But one-half of such royalties would belong to Watson.

Accordingly, the judgment of the trial court in favor of appellee Bratton against George J. Watson for title to the land in controversy is hereby reformed to the extent that title to an undivided one-half interest in and to one-eighth of all the oil, gas, and other minerals in and under the land in controversy is hereby decreed to be vested in appellant George J. Watson, and as an incident and right necessarily attached to that title it is decreed that, as against plaintiff J. H. Bratton, said Watson is entitled to receive an undivided half interest in any and all royalties which the lessee Texas Pacific Coal & Oil Company contracted and agreed to pay, to its lessor, W. H. Nolan, by virtue of the terms of the lease to that company referred to and described in the opinion upon original hearing. Subject to that interest so decreed in Watson and subject to the lease above mentioned, and as between Bratton and Watson, the judgment in favor of Bratton is in all other respects affirmed. The judgment as between plaintiff Bratton and the other defendants who did not prosecute an appeal is left undisturbed.

The motion of appellee J. H. Bratton for a rehearing as against the appellant Texas Pacific Coal & Oil Company has been duly considered and is overruled.