## LEON v. GULF PRODUCTION CO.
### No. 9439.

Court of Civil Appeals of Texas. Galveston. Feb. 4, 1931.

Dissenting Opinion Feb. 11, 1931.

Rehearing Denied March 12, 1931.

Cole, Cole, Patterson & Kemper and Atkinson & Gaugler, all of Houston, for appellant.

John E. Green, Jr., Peveril O. Settle, and John Broughton, all of Houston, for appellee.

LANE, J.

On the 31st day of January, 1918, Elmer Fisher and wife, Martha Fisher, leased to United Petroleum Company certain lands out of which the land involved in the suit hereinafter mentioned is taken. The consideration moving the lessors to make the lease and the conditions and provisions thereof pertinent to the issues presented on this appeal are as follows:

"That for and in consideration of the sum of One Hundred Dollars to us cash in hand paid by said lessee the receipt of which is hereby acknowledged, and the further sum of One Hundred Dollars to be paid monthly thereafter until oil, gas, or other minerals are produced from said premises herein leased in a sufficient quantity that the royalty paid lessor hereinafter provided shall amount to the said sum of One Hundred Dollars per month; or until said premises are abandoned whereupon lessee shall forfeit all rights hereunder and this contract shall be null and void and of no further force and effect, and it is understood that written notice to the lessor is necessary setting forth said lessee's intention of abandoning said premises before said premises shall be considered as abandoned; we hereby demise, lease and grant unto said lessee, and its assigns, all of the oil, gas, sulphur and other minerals in and under the following described tract of land; and the exclusive right to prospect and operate thereon for oil, gas, sulphur and other minerals, together with the right-of-way, right to lay pipe lines over, to use water, gas and oil to operate said property, taken from said premises to erect derricks, to build tanks and to place all necessary machinery or structures on said premises, and to remove all property at any time, that may be placed on said land during the term of this lease by lessee or its assigns."

Here the land leased is described; then the instrument continues:

"To have and to hold the same unto the lessee, and its assigns for a term or period of ten years from the date hereof and as much longer thereafter as oil, gas, sulphur or other minerals is produced in paying quantities thereon, or until lessee is satisfied that oil, gas, sulphur or other minerals in paying quantities cannot be produced from said premises.

"III. Said lessee is here now granted the privilege of entering in and upon said premises and to commence operations thereon for the drilling of a well for oil, gas, sulphur, or other minerals.

"IV. Failure on the part of the lessee to make any monthly payment as is hereinbefore provided for and prior to the time when the royalty shall amount to the said monthly rental, then and in that event this lease shall become null and void, and of no further force and effect. Said monthly rentals are to be deposited or tendered for deposit to the Crosby State Bank, Crosby, Texas, one-half thereof to be deposited to the credit of Elmer Fisher and one-half to the credit of Martha Fisher and it is understood by all parties that such tender shall be considered fulfilling that portion of this contract as applies to paying said monthly rental to keep this contract alive.
* * *

"VIII. It is mutually agreed by and between the parties hereto that lessee is authorized to sell, sublet or assign the whole or any fractional part of this lease at any time during the term of this lease. This is a lease for the purposes and of property above described.

"Witness our hands this the 31st day of January, A. D. 1918.
"[Signed] Elmer Fisher
"Martha Fisher
"United Petroleum Company
"By G. W. Hindman, President."

On the 31st day of October, 1918, Elmer Fisher and wife, Martha Fisher, conveyed the fee to the land leased to the United Petroleum Company, hereinafter called petroleum company, to the Gulf Production Company, hereinafter called production company.

Subleases were made to 30 acres of the leased premises to parties other than to the plaintiff in this suit and his assigns, leaving 34.7 acres unassigned by the petroleum company.

On the 9th day of July, 1927, the petroleum company assigned to Guy Hamilton Winfree its lease as to 34.70 acres of the land it had leased from Fisher and wife. Winfree in turn assigned his lease to G. W. Hindman, trustee, and Hindman, trustee, assigned to Isadore Leon on the 1st of March, 1929, all interest he as trustee and Winfree as cestui que trust had in the certain 10 acres of the land involved in this suit, a part of said 34.7 acres of land.

Neither the petroleum company, original lessee, nor any of its assigns, including Isadore Leon, at any time availed itself or themselves of the option of putting an end to the contract of lease by declaring in writing or otherwise that it or they were satisfied that no oil, gas, sulphur, or other minerals could be produced from the leased premises, as provided for in the lease contract. The production company, to whom the fee to all the land was conveyed by Fisher and wife, was paid the $100 per month for ten years, as provided in the contract, and a tender of $100 was made to it for the month next after the end of the ten-year period, which tender was refused by the production company upon its contention that the lease had expired by its terms at the end of the ten-year period. A small amount of oil was produced from the premises during the first year of the lease, but no oil, gas, or other minerals were thereafter produced in paying quantities during the remainder of said ten-year period. Upon the declaration of the production company that the lease had expired, and its refusal to accept the tender made, Isadore Leon brought this suit against the production company in the form of trespass to try title to a leasehold interest in and to the 10 acres of land hereinbefore mentioned, which was assigned to him by Hindman, trustee.

After alleging the facts as stated in the foregoing statement, the plaintiff alleged substantially that the original lessee, petroleum company, and those claiming under it, have spent about $150,000 in developing the leased premises and in prospecting for oil, gas, and other minerals; that several wells have been drilled on the premises which proved that the same is capable of producing oil and gas in paying quantities; that by the actions of the defendant in asserting the lease at an end and its refusal to accept the rental due thereunder a cloud has been cast upon plaintiff's title to the interest owned and claimed by him; and that because of such cloud and adverse claim it is impossible for him to finance the drilling of wells to produce oil and gas or to sell the same, to appellant's damage. He prayed that title to the leasehold claimed by him be established. He tendered into court the rentals claimed by him to be due and asked that defendant be required to accept same, and the cloud upon his said title be removed; that defendant be enjoined from interfering in his possession and development of said ten acres of land for the purposes designated in the lease, and that he have judgment against defendant for $10,000 damages.

By defendant's amended answer upon which it went to trial, it denied generally the allegations of the plaintiff and entered its plea of not guilty.

A jury was impaneled and sworn to try the case, but upon the closing of the evidence by all parties the court instructed a verdict for defendant. From such judgment the plaintiff, Isadore Leon, has appealed.

Appellant substantially contends: First, that the lease contract entered into between Fisher and wife and the petroleum company by its plain terms provides that it shall continue in force until the lessee, or its assigns, shall declare that it or they are satisfied that no oil, gas, sulphur, or other minerals can be produced from the leased premises in paying quantities, provided the lessee or its assigns shall pay to lessors or their assigns $100 per month during the life of said lease contract, and that since the undisputed evidence shows that no such declaration was ever made, and that the production company, assignee of the original lessor, was paid the sum of $100 per month for ten years and was tendered $100 by appellant for himself and all other lessees for the month next after said ten-year period, the court should have held that the lease was in force and effect and have instructed a verdict for appellant upon his request therefor; second, that in the event the construction of the contract first contended for cannot be placed on the same, that the clause cannot be read out of the lease and therefore creates an ambiguity to be explained by parol testimony; and, third, that independent of the clause mentioned, the beginning of a well prior to January 31, 1928, the end of the ten-year period, beginning on the 31st day of January, 1918, the date of the contract, which was completed as a producer on February 22, 1928, and which would have continued to produce except for interference on the part of appellee, and the payment or tender of rentals, perpetuated the lease.

It is the contention of appellee that the terms of the contract of lease were plain, clear, and unambiguous; that the clause "or until lessee is satisfied that oil, gas, sulphur or other minerals in paying quantities cannot be produced from said premises," was but an option reserved by and allowed to the lessee to at any time end the contract and release itself of any obligation to pay lessors further monthly payments of $100 per month, by giving notice in writing that it was satisfied that "oil, gas, sulphur or other minerals could not be produced from said premises"; that there were two forfeiture provisions in the contract, one being the right of the lessors to forfeit it in the event lessee failed to pay to lessors the $100 monthly during the ten-year period mentioned therein, and the other the right of lessee at any time to terminate it by giving written notice to lessors that lessee was satisfied that no oil, gas, sulphur, or other minerals could be produced on the leased premises; that by the plain, clear, and unambiguous terms of the contract it was to terminate and end ten years from its date, to wit, on January 31, 1928, unless at such time, oil, gas, sul-

phur, or other minerals were being produced in paying quantities.

Appellee contends further that appellant is in no position to ask for a perpetuation of the contract upon his contention, made for the first time in this court, that just about three months before the lease would expire by its own terms, on January 31, 1928, one R. P. Bartlett and his associates began to drill a well at some place on the tract of 64.70 acres leased by the Fishers to the petroleum company, which was completed as a producer on the 22d day of February, 1928, and which would have continued to produce except for interference on the part of appellee, in that appellant by his pleadings seeks the specific performance of an oil, gas, and mineral lease, and there are no allegations in his petition which would entitle him to a decree of equitable specific performance, and in that the undisputed evidence shows that Bartlett did not drill on the property in controversy and that no drilling operations were ever carried on on the ten acres in controversy, and that the land upon which Bartlett began to drill a well was not the ten acres in controversy, but was a separate tract from the ten acres involved in this suit.

We overrule the contentions of appellant and sustain appellee's contention in its entirety.

■ It appearing from the undisputed evidence, as well as from the agreement of the parties, that no oil, gas, or other minerals were being produced from any part of the land leased by the Fishers on January 31, 1928, or the end of the ten-year period, nor had there been any such production since the year 1920, the lease by its plain and clear terms expired on the 31st day of January, 1928, not by way of forfeiture, but by the express provisions thereof. It was not in force and effect at the time this suit was instituted.

■■ The clause "or until lessee is satisfied that oil, gas, sulphur or other minerals in paying quantities cannot be produced from said premises," appearing in the lease contract, creates no ambiguity therein. It is clearly apparent from the instrument as a whole that in making the lease contract the parties intended that, by the clause quoted, the lessee, petroleum company, was reserving the right to terminate the lease at its option by giving written notice to the lessors, at any time, of its intention to abandon the lease to the end that it might be relieved of the further payment of the $100 provided for in the contract. The construction of appellant placed on the clause quoted, if adopted, would ignore the definite and clear provision in the contract that the lessee should have and hold the leased premises for a term or period of ten years from the date thereof and as much longer thereafter as oil, gas, sulphur, or other minerals are produced in paying quantities, would read out of the contract the ten-year provision.

It is the duty of the courts in construing a contract, if possible, to give effect to all of its parts and to give to it its true meaning by a consideration of all of its provisions taken as a whole. It was, as we have already said, clearly expressed in the contract that if at any time the lessee should become satisfied that no oil, gas, sulphur, or other minerals in paying quantities could be produced from the leased premises within the ten-year period, it would have the right to abandon the lease and be relieved of any further monthly payments. Such contention is in harmony with the ten-year provision and does not nullify and make the ten-year period provision useless or meaningless.

To say that this lease shall remain in force for ten years and as much longer as minerals are produced in paying quantities, and in the next breath to say that this lease shall remain in effect after the ten-year period without the production of minerals, until lessee is satisfied, is too contradictory to have ever been the intention of the parties. One destroys the other.

When the lease says that it shall remain in force for a period of ten years and as much longer as minerals are produced in paying quantities, the length of the lease is named, and the further expression "or until lessee is satisfied that oil, gas, sulphur or other minerals in paying quantities cannot be produced from said premises," was intended to limit the definitely named time. The lease under its express terms expired at the end of the ten-year period, because it is agreed that no minerals were being produced on that date. American Window Glass Co. v. Indiana Natural Gas & Oil Co., 37 Ind. App. 439, 76 N. E. 1006; American Window Glass Co. v. Williams, 30 Ind. App. 685, 66 N. E. 912; Indiana Natural Gas Co. v. Grainger, 33 Ind. App. 559, 70 N. E. 395; Western Pennsylvania Gas Co. v. George, 161 Pa. 47, 28 A. 1004; Brown v. Fowler, 65 Ohio St. 507, 63 N. E. 76; Bettman v. Harness, 42 W. Va. 433, 26 S. E. 271, 36 L. R. A. 566; Indiana Natural Gas & Oil Co. v. Beales (Ind. App.) 74 N. E. 551; Ellis v. Cricket Coal Co., 166 Iowa, 656, 148 N. W. 887; Van Liew v. Norwood-White Coal Co., 190 Iowa, 79, 179 N. W. 960.

We repeat, to adopt the construction of the contract as contended for by appellant, the provisions that the lessee should hold the lease for a term or period of ten years from the date of the contract and as much longer as oil, gas, sulphur, and other minerals are produced in paying quantities, would be read out of the contract and the lessee could hold the premises for ten, twenty or fifty years, or indefinitely, so long as it paid $100 per month to lessors and did not notify the lessors in

writing that it was satisfied that no oil, gas, etc., could be produced on the leased premises. To our minds such construction cannot be made.

We now come to a discussion of the contention of appellant that the evidence shows that the lessee, its assigns and successors, prior to January 31, 1928, began the drilling of a well on the leased premises and continued work thereon in good faith until same was brought in as a producer shortly subsequent to January 31, 1928, same being the end of the ten year period, and which would now be capable of producing except for the act of appellee in giving notice that the lease had terminated, and therefore in equity the lease of appellant was continued in force beyond the ten years and the trial court erred in not so holding, and in instructing a verdict for appellee.

We agree with appellee that appellant is in no position to insist upon the perpetuation of the lease beyond the ten-year period upon his contention that Bartlett began a well at some point on the 64 acres leased by the Fishers to petroleum company three months prior to the end of the ten year period mentioned in the contract. Appellant's contention that his lease was continued in force beyond the ten-year period is supported by neither pleadings nor evidence. There are no allegations by appellant raising the issue as to whether the development work carried on by Bartlett and his associates on a ten-acre tract, a part of the 64-acre tract, but no part of the ten acres involved in this suit, perpetuated the lease he held beyond the ten-year period mentioned in the contract.

■■ Since it conclusively appears that the lease contract came to an end after the expiration of the ten-year period, appellant cannot recover unless he may do so by reason of some equity pleaded by him.

If appellant wished to avoid the effect of the ten-year period stated in the contract, he should have specially alleged the matters of avoidance or explanations upon which he relies to continue the contract in force beyond the ten-year period. The defense of equitable estoppel must be specially pleaded. W. L. Moody & Co. v. Rowland, 100 Tex. 363, 99 S. W. 1112; Carson v. Taylor (Tex. Civ. App.) 238 S. W. 261; Cooper v. Loughlin, 75 Tex. 524, 13 S. W. 37, 38.

In the case last cited it is said:

"In the case of Paul v. Perez, 7 Tex. 345, it is said: 'The principle that the allegata must be broad enough to admit all the necessary proof, and that every material fact must be alleged, has been often declared by this court; first solemnly adjudicated in Mims v. Mitchell, 1 Tex. 443, and sustained by an unbroken train of decisions from that time down to the present. * * * And if there was proof without such allegata, it should be disregarded.' "

The undisputed evidence shows that no drilling operations were ever carried on the ten acres upon which appellant claims a lease. The ten acres upon which the Bartletts began the drilling of a well was a separate ten acres from the tract involved in this suit. The undisputed evidence shows that the Bartletts produced no oil from the land upon which they operated, but it is contended by appellant that he had a fine showing only.

■ We adopt as our own the following from appellee's brief:

Appellant specifically alleged the acts done by the lessees to keep the leasehold estate in force and effect, but he nowhere alleges that his lease should be kept in force beyond the ten-year period by reason of the fact that the Bartletts were carrying on drilling operations on the ten acres claimed by him. There are no allegations in appellant's petition advising the appellee that he relied upon the development work carried on by the Bartletts to continue the lease in force after the ten-year term or period. He did not seek specific enforcement on that ground. It was an issue not made by the pleadings. In the absence of such allegations, the appellee was not required to meet that issue. It cannot now be relied upon as a reason for the reversal of the judgment of the court below. The appellant will be confined to the specific grounds set up in the original amended petition seeking specific enforcement of the lease. The appellee was not called upon to meet an issue of that character, as there are no allegations in appellant's pleadings to support it.

It is not contended, and certainly not shown, that the Bartletts produced oil, gas, sulphur, or other minerals in paying quantities from the demised premises. In fact, it is admitted that no oil, gas, sulphur, or other minerals had been produced from the leased premises since the year 1920. It is only contended that the Bartletts had a fine showing of oil. The testimony shows that the Bartletts continued in possession of the ten acres which they held under lease until the summer of 1928, without being disturbed by the appellee, and that they were never able to rehabilitate the well which they drilled on their ten-acre tract and they finally abandoned it without producing oil, gas, sulphur, or other minerals in paying quantities.

For the reasons pointed out the judgment of the trial court is affirmed.

Affirmed.

GRAVES, J. (dissenting).

It had been my preference for the question concerning the proper construction of the contract here involved to be certified to the Supreme Court, and an order to that end was

heretofore entered; on the subsequent return of the third member of the court who had then been absent, however, by majority action that was rescinded and the cause was decided here, under the interpretation Justice LANE'S opinion puts upon the instrument.

To that I cannot agree; it seems to me that an anomalous if not grotesque juridical denouement arises when this court solemnly pronounces as one having authority that the parties in making it never intended by the clause "or until lessee is satisfied that oil, gas, sulphur, or other minerals, in paying quantities cannot be produced from said premises," that this lease should remain in force a moment longer than ten years if any one of the enumerated minerals was not at that time actually being produced on the 64 acres, when they themselves as witnesses on this trial, none being parties to nor interested in the suit, all testified that as such contracting parties they meant no such thing; that, on the contrary, they mutually intended and understood that the lease would not terminate at the expiration of the ten-year period, provided the lessee then believed that oil, gas, or sulphur could be produced therefrom in paying quantities, and the rentals were being paid.

Mr. Fisher, the lessor, testified:

"A. Well, my intention when I leased the land was: I leased it to him for $100.00; I did not know how long it would be, just so they paid me the $100.00 a month, whether for fifty years or a hundred."

"Q. Was it discussed with you at the time you executed the contract as to what that hundred dollar clause meant, and that you have just stated was the final outcome of your proposition?"

"Q. Did you all discuss what the clause meant before you signed the lease? A. Yes."

"Q. And just what you have said in your previous answer was what your intention was, which finally developed as a result of that conversation? A. Yes, sir. * * * I distinctly leased them the land for as long as they paid the $100.00, whether they drilled or not. * * *

"The reason that provision was in there that they pay me $100.00 per month until we got royalties that were more than $100.00 per month, is because I picked that and figured that $100.00 would be more than a living for me. I did expect them to drill on the land at some time, and I did expect the royalties to exceed $100.00 per month. It didn't make any difference to my wife and I whether they drilled upon this land or not. Certainly it would have made a difference to me if we could have gotten royalties that amounted to four or five hundred dollars per month. What I mean to say is, when they got ready to drill they could go ahead, and if they wanted to hold it, it was all right with us. Of course I would rather have had a well drilled in on it.

"I did not understand that it was for ten years; I didn't understand it that way. Just like I have told here, I didn't have any specific time.".

Mr. Hindman, the acting officer of and alter ego for the lessee petroleum company, testified as to the objective of the same clause:

"As an officer of that company I did have occasion to enter into an oil and gas lease with one Elmer Fisher and wife, Martha Fisher, about the 31st day of January, 1918. That lease was executed in the Fisher home out at Barber's Hill. At the time of its execution there were present Elmer Fisher and his wife, Walter Keeble, myself, and a notary public.

"Q. Answer the question, Mr. Hindman, what was the intention of the parties as to what that provision meant? A. That the lease should remain in force so long as we kept the rentals paid up, or until we were fully satisfied that oil, gas, and sulphur, or other minerals could not be produced on the land."

Obviously such lessors and lessee had a legal right to so contract concerning their own property in the land and the means of exploiting it for minerals, there being no suggestion of any fraud between themselves nor as affecting others, nor any as to the contravention of any public policy or authority, wherefore, it would seem, their mutually legitimate and so unmistakably expressed purpose should be enforced. Corsicana Pet. Co. v. Owens, 110 Tex. 568, 222 S. W. 154.

Especially so, when the undisputed evidence showed: (1) That the lessee and its assigns regularly paid the promised $100 per month either in money or oil to the lessors and their grantee, the appellee here, throughout the whole of the specified ten years from January 31 of 1918 up to January 31 of 1928, and then so tendered the latter the $100 payment for the ensuing month of February of 1928, which it refused to accept; (2) that during that ten years of time such lessee and its assigns made reasonable and bona fide efforts to produce oil on the 64 acres, spending about $100,000 in drilling nine wells thereon, some of which for stated periods produced considerable oil; (3) that there was never a time, from the inception of the lease in 1918 up to and subsequent to the appellee's refusal to accept the proffered continuance of the stipulated $100 monthly payments in February of 1928, that the lessee and its assigns were satisfied that oil, gas, sulphur, or other minerals in paying quantities could not be produced from the land; on the contrary, they still affirmatively believed and asserted on this trial that it could then be so produced.

So that, under these uncontroverted facts, by analogy to the Owens Case, supra, the question simply is whether the terms of the lease are such as to make this ascertained intention of its makers unenforcible.

How it can be that they are so does not readily occur to me. This was not the ordinary form of leases with which mainly, if not exclusively, the authorities cited in support of the majority construction had to do—those called "development" contracts, in which the chief consideration and incentive to the lessors in executing them, there usually being otherwise nothing more than a merely nominal quid pro quo, was the expressly contracted-for development, together with the consequently anticipated royalties in minerals. Whereas, in material differentiation, with these lessors that was a wholly secondary concern, their controlling objective being the very substantial return to them of $100 per month, "more than a living for them," there being at the same time no obligation whatever by them imposed upon the lessee to drill at all, only the privilege to do so being granted, and the land being in strictly "wildcat" territory when the contract was made.

To contend that such a contract in those circumstances providing for its continuance "until the lessee is satisfied" that production in paying quantities cannot be had is too indefinite and uncertain to be given any effect at all, at least when the decision of the arbiter so designated is made in good faith, is to inveigh against the clear current of authority, especially in Texas. 24 A. & E. Ency, of Law, page 1236, McDougall v. O'Connell, 72 Wash. 349, 130 P. 362, 131 P. 204; 7 Words and Phrases, First Series, page 6329; 9 C. J. § 115, page 772; G., H. & S. A. Ry. Co. v. Henry & Dilly, 65 Tex. 685; Kilgore et al. v. Baptist Educational Society, 89 Tex. 465, 35 S. W. 145; Jones v. Gilchrist, 88 Tex. 92, 30 S. W. 442; Kettler Brass Mfg. Co. v. O'Neil, 57 Tex. Civ. App. 568, 122 S. W. 900; Martinsburg & P. R. Co. v. March, 114 U. S. 549, 5 S. Ct. 1035, 29 L. Ed. 255.

In my view there inheres in it no such uncertainty, nor yet the claimed repugnance to the preceding recitation that the contract shall remain in force as much longer than ten years as minerals are produced in paying quantities, nor the final insistence—made by way of an asserted alternative—that it must, then, contemplate a perpetual continuance; to me, on the contrary, it simply accords two conditional extensions of time after the running-off of the numerically-stated term of ten years, instead of this foregoing and usual one only, in oil lease contracts, to wit, (1) as much longer thereafter as oil is produced in paying quantities, (2) or until lessee is satisfied that it cannot be so produced; in other words, full accord is here expressed with this appraisal of the legal effect of the contract as a whole appearing in the able reply brief for appellant:

"As we read the lease, every provision is given effect on the following construction: It shall last until (1) the lessee gives written notice of an intention to abandon it, and this whether before or after the ten year period, (2) for ten years certain without any obligation to drill or to do anything other than pay rentals (Buie et al. v. Porter et al. [Tex. Civ. App.] 228 S. W. 999, 1002; Aycock v. Reliance Oil Company et al. [Tex. Civ. App.] 210 S. W. 848); (3) after ten years if oil, gas and other minerals are then being produced in paying quantities, and still further (4) until appellee is satisfied that the same cannot be so produced.

"This gives a reasonable construction to every provision in the lease and shows a meaning for it."

No perpetuity nor indeterminate condition is here imported, because the clause in question fixed a time ending with a specific occurrence that was definitely ascertainable—that is, until the lessee should be satisfied that oil, gas, sulphur, or other minerals could not in paying quantities be produced from this land—which privilege, or quest, as I read the authorities, he would be required to exercise not only under reasonable conditions and limitations, but in good faith as well. 24 A. & E. Ency. of Law, p. 1236, cited supra.

It is, moreover, both a matter of common knowledge in the business itself and a generally known fact of a public nature, that the courts may take judicial cognizance of, without evidence, that subterranean petroleum oil in the coastal plain of Texas is only found in such individual pools, or detached deposits, as are readily exhaustible.

To pick up this, "or until lessee is satisfied that oil in paying quantities cannot be produced," clause, and hark back with and tie it exclusively to the introductory, detached, and wholly independent right of abandonment there given the lessee—thereby deducing that it was only intended to apply to and limit such particular right, and that within the ten-year period—seems to me clearly untenable, for these among other reasons: (1) It would so disarrange the structural form of the contract laid down by the makers as to possibly import something they explicitly say they did not mean; (2) the right to cancel given to the lessee in the premises or first part of the instrument would apply just as much to the provision in the habendum clause extending the lease on production in paying quantities, as it would to the matter of the lessee being satisfied; (3) this quoted provision as to being satisfied was not only put by its authors after, but was stated as a distinctly disjunctive right to the one attending actual production in paying quantities; (4) as heretofore pointed out, the lease consid-

ered from its four corners, since it did not require any development or drilling whatever, reasonably indicates its dominating purpose to have been to make sure of obtaining $100 a month income for the lessors over as long a time as possible, even if that result only should flow to them for 50 or 100 years.

While these individual conclusions, if given their full effect, would require the lease as an entirety to be so construed as on its face giving the lessee the right to continue holding thereunder so long as he paid the rent and in good faith was not satisfied that oil could not be so produced, in much respect for and in deference to the contrary views of both the trial court and the majority of this court, I prefer to and do limit this dissent to the holding that the alternative clause, "or until lessee is satisfied," at least created such an ambiguity in its meaning as was subject to explanation by parol testimony; wherefore, the giving of the peremptory instruction was reversible error.

The other questions I put behind me, upon such considerations as these: This lease by its express terms was assignable, and appellant held the ten acres thereof he claimed regularly down under the original lessee, being therefore in privity of contract and title with it, hence succeeded to whatever rights it would have had therein subsequent to the ten-year period; he sued in trespass to try title to recover the ten-acre leasehold interest, with alternative counts and prayers seeking specific performance, and also asked for general relief; I think his pleading, as against only the general demurrer interposed against it, was sufficient.

Further discussion is deemed unnecessary; in my opinion the judgment should have been reversed, and the cause remanded for a new trial on the facts, at least in so far as concerned the meaning of the contract.