## Burgan, Appellant, v. South Penn Oil Co.

*Real property—Oil and gas leases—Right to drill more wells than the lease requires—Construction—Intention.*

1. The rule that covenants in oil leases which are to be performed by the lessee and which relate to the right to drill or explore for oil are to be construed most favorably to the lessor is founded upon the presumption that an oil lease is made for the purpose of immediate development unless the contrary appears in the contract. The purpose of the rule is only to spur the lessee to perform his covenant to drill and discover oil; it cannot be invoked to aid the lessor in dispossessing a lessee who has faithfully performed all his covenants, discovered oil in paying quantities and paid the royalties contemplated by the lease.

2. The lease of a right to mine for oil and gas is for the purpose of exploration until oil and gas are found, but upon the discovery of oil and gas in paying quantities, the lessee has a vested interest in the oil and gas granted by the lease as long as it can be produced in paying quantities.

3. The owner of several tracts of oil and gas land leased the exclusive right to mine for and produce petroleum and natural gas therefrom for the term of one year and so long thereafter as oil or gas could be produced. Each lessee agreed "To commence the drilling of one well......within thirty days from the date above and prosecute the drilling of same with due diligence to completion and commence the drilling of a second well within sixty days from the completion of the first well, prosecute the drilling of the

second well with due diligence to completion, or forfeit all of said land except eight acres around the first well drilled and to commence drilling the third well within sixty days from completion of second well, or forfeit all of said lease, except seventeen acres around the first two wells drilled. A failure of the second party to comply with any of the requirements herein contained to render said lease null and void and to be of no binding force." The defendant, to whom the leases were all assigned, drilled three wells or more on each of the tracts and produced oil in paying quantities, royalties on which were duly received by the lessor. Certain of the old wells were abandoned and new wells were drilled by defendant which produced oil in paying quantities. On one property leased, all the wells had been abandoned, except one which was destroyed by a flood, and thereafter defendant endeavored to restore the said well but had not succeeded when the bill was filed. Plaintiff sought to enjoin defendant from operating the new wells which it had drilled, alleging that no more than three wells could be drilled on each of the properties leased and that upon the abandonment of the wells originally drilled defendant was not entitled to drill new wells. The lower court decided that by the discovery of oil in paying quantities in the three wells that each lessee was required to drill, the lessee had become vested with the right to all the oil under the tract on which such wells were drilled, and could drill other holes if it was impossibe to pump all the oil from the holes already drilled; that there was nothing in the evidence to show that defendant had ever surrendered, forfeited or abandoned its right, and dismissed the plaintiff's bill. *Held,* no error.

Argued Oct. 17, 1913. Appeal, No. 259, Oct. T., 1913, by plaintiff, from decree of C. P. Washington Co., No. 2174, in Equity, dismissing bill in Equity for an injunction in case of A. M. J. Burgan v. South Penn Oil Company, a corporation created and existing under the laws of the State of Pennsylvania. Before FELL, C. J., BROWN, MESTREZAT, ELKIN and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an injunction.

On final hearing MCILVAINE, P. J., filed the following opinion:

1. Mrs. A. M. J. Burgan, the plaintiff in this case, now is and for many years has been the owner in fee

of two adjoining farms in Cecil Township, Washington County, Pennsylvania, containing in the aggregate about 303 acres, a map of which is attached to the plaintiff's bill of complaint, and with all its words, figures, lines, marks and legends is now expressly made a part of this finding. The said farms together are bounded as follows: On the north by lands of S. K. Hissom, Monrean and Scott; east by lands of William Patterson and Charles McDonald; south by the southerly line of the Hickory Road running through the village of Venice, by lands of J. G. Moore and by other lands of plaintiff; and on the west by other lands of plaintiff and by lands of Antell. But the title to said 303 acres of land was taken and is now held by the said Mrs. A. M. J. Burgan, the plaintiff, subject to six separate oil and gas leases which were executed by the owners of different parts of said land before she became the sole owner in fee thereof.

2. Between December 17, 1891, and April 7, 1895, the then owners of parts of the said two farms executed six separate and distinct oil and gas mining leases thereon, full copies of which leases are attached to the plaintiff's bill of complaint herein, which leases with all their words and figures are now expressly made a part of this finding, as though incorporated at length herein; the said leases being as follows:

Lease "A," dated January 25, 1894, upon 25 acres of the said two farms.

Lease "B," dated March 13, 1894, upon 15 acres of the said two farms.

Lease "C," dated December 15, 1894, upon 20 acres of the said two farms.

Lease "E," dated December 17, 1891, upon 35 acres of the said two farms.

Lease "F," dated April 27, 1895, upon 30 acres of the said two farms.

Lease "G," dated December 31, 1891, upon 83 acres of the said two farms.

These leases were originally taken by different com-

panies and persons, but long prior to the bringing of this suit all of the six leaseholds had been transferred and assigned to the South Penn Oil Company, the defendant in this suit, and on September 21, 1908, the plaintiff, Mrs. A. M. J. Burgan, made a contract with the South Penn Oil Company, the defendant in this suit, in which she recognized the fact that said company was then the owner of said leaseholds, which contract is set out in defendant's Exhibit "1" in the record.

3. The defendant company or its predecessors in title entered upon and operated the said leases as follows:

Upon Lease "A" it drilled four wells, all of which produced oil in paying quantities, and about eight years ago abandoned three of them.

Upon Lease "B" it drilled three wells, all of which produced oil in paying quantities, and about eight years ago abandoned two of them.

Upon Lease "C" it drilled five wells, all of which produced oil in paying quantities, and about eight years ago abandoned three of them.

Upon Lease "E" it drilled six wells, all of which produced oil in paying quantities, and about eight years ago abandoned five of them.

Upon Lease "F" it drilled five wells, all of which produced oil in paying quantities, and about eight years ago abandoned four of them.

Upon Lease "G" it drilled eight wells, all of which produced oil in paying quantities, and about eight years ago abandoned seven of them.

The reason why the wells on the several leases were abandoned, as above set out, was their failure respectively to longer produce oil in paying quantities, and the defendant company in abandoning each of said wells had no intention of abandoning the lease on which said well was located or its right to drill other wells upon said lease.

The defendant company, shortly before this bill was filed, drilled three new wells in addition to those above

enumerated, in all of which oil has been discovered in paying quantities.

The locations of the wells abandoned, of the wells still being pumped and of the new wells lately drilled are indicated on the map attached to the plaintiff's bill; the first are marked "S. P. O. Co. A.W.;" the second are marked "S. P. O. Co. P.W.;" and the third are marked "S. P. O. Co. N.W."

4. That the defendant company in abandoning the foregoing wells removed from each well its derrick, engine, machinery, tubing and casing, and also all timbers of any value, and burned the debris, so as to render the land fit for agricultural purposes; and that such land has ever since been used for farming purposes except only such portions thereof as are necessary for the operation of the remaining wells and such portions as are necessary for the operation of the three new wells drilled.

5. That the first well drilled upon the leasehold in Lease "E" did not produce fifty barrels of oil per day for sixty days, and neither the South Penn Oil Company nor any of its predecessors in title were required to nor did they pay an additional bonus thereon, as provided in the lease in case the first well produced more than fifty barrels of oil per day for sixty days. The remaining well now on said leasehold is out of order and has not been producing oil or gas since September, 1912, but the defendant company has since said date expended large sums of money in attempting to restore said well to the condition it was before it was injured by a flood and when it was producing oil in paying quantities, and at the time the bill was filed in this case they were working on said well.

6. That the defendant company has for eight years last past conducted no operations upon the said land nor any part thereof, except the operation during that time of the remaining wells drilled thereon which had not been abandoned, as hereinbefore in these Findings

of Fact set out, and except the drilling of the three new wells in which oil was discovered in paying quantities, as hereinbefore set forth.

7. That the defendant company claims the right to occupy and use, for the purpose of drilling and operating for oil and gas, the whole of said land as described in the said several leases, and has lately drilled three additional wells, as above found, one new well being located on Lease "B," one on Lease "C" and one on Lease "E."

8. That before the defendant company started to drill any of the three wells the plaintiff gave the defendant company written notice forbidding it to prosecute any new operations for oil and gas on the said land, but notwithstanding such notice and after receipt thereof the defendant company drilled the additional wells above referred to.

9. That the defendant company and its predecessors have carried on operations continuously on the lands covered by said leases, in accordance with the terms thereof, and the plaintiff had regularly received and accepted from the defendant company her rents and royalties, as provided in said leases and agreement, up to the time of the filing of this bill.

CONCLUSIONS OF LAW.

First. That the plaintiff is not entitled to the relief prayed for in any of the prayers of her bill.

Second. That the plaintiff's bill should be dismissed at her cost.

COMMENTS.

Two questions arise in this case:

First. Did the exclusive right to mine, take and carry away all the oil in and under the land embraced in the six tracts of land covered respectively by the six oil leases recited in the plaintiff's bill ever vest in the defendant company?

Second. If it did so vest, did the defendant company

at any time before the plaintiff's bill was filed surrender, forfeit or abandon said exclusive right?

To determine these questions we must first look at the express and implied covenants contained in the leases; and, second, consider what the lessees or their assignee have done toward the performance of the covenants therein contained. These six leases are not exactly alike in their terms, but are so near alike that the principles which apply to one will apply to all. We therefore will refer to Lease "A" in applying the principles which we think rule the case, and to have it before us it is herein recited in full:

"EXHIBIT A.

(Copy)

OIL AND GAS LEASE.

"AGREEMENT OF LEASE,

Made this 25th day of January, A. D., 1894, between Sarah J., Hugh and D. J. Sterling and W. J. & A. M. J. Burgan, Lessors, and C. B. Shaffer, Lessee, Witnesseth:

"That the lessor does hereby grant unto lessee for the term of One year (and so long thereafter as oil or gas is produced from the land leased and royalty and rentals paid by lessee therefor) the exclusive right to mine for and produce petroleum and natural gas from, and the possessions of so much of Twenty Five acres of land in Cecil Township, Washington County, State of Pennsylvania, as may be necessary therefor, with the right to use water and gas (if found) for the necessary engines, and to remove all machinery, fixtures, &c., placed by lessee on the premises.

"Said Twenty-five acres to be laid off in the following manner: The east line of said Twenty-five acres to be the Philadelphia Co. lease known as the thirty acre lease and the Orchard. The North line to be the Fisher Oil Co. lease. The South line to be the stable yard, Orchard and the Philadelphia's 15 acre lease more or less. The said Twenty-five acres to be surveyed off by a line running North and South.

"No well to be drilled within ten rods of the buildings without lessor's consent.

"The lessee to deliver to lessor, in pipe line, the one-eighth of all petroleum produced from the premises, and to pay Five Hundred dollars per annum for each gas well from which gas is marketed, payable in advance from the date and while the same is so utilized, and to pay all damages to growing crops and fences. Second party to keep all fences and gates closed that are effected by them.

"First party to have gas free of cost for lighting and heating dwelling house while gas may be marketed on said lease.

"A deposit to credit of lessor in German National Bank, of Pittsburgh, Pa., to be a good payment of any moneys on this lease.

"Second party to pay the $7/8$ of all the increase of taxes caused by operations of said 25 acres of land.

"All grants and covenants to extend to the heirs and assigns of the parties hereto.

"Second party agrees" to commence the drilling of one well on the said 25 acres within 30 days from date above and prosecute the drilling of same with due diligence to completion and commence the drilling of a second well within 60 days from completion of 1st well, prosecute the drilling of 2nd well with due diligence to completion or forfeit all of said land except 8 acres around the 1st well drilled and to commence the drilling of the 3rd well within 60 days from completion of 2nd well or forfeit all of said lease, except 17 acres around the first two wells drilled. A failure of the 2nd party to comply with any of the requirements herein contained to render said lease null and void and to be of no binding force." The 1st party grants 2nd party privilege of using water from water courses on said farm for operating said 25 acres of land provided lines are laid in a manner satisfactory to 1st parties. 2nd party not to use water from Springs on said farm or let sand pumpings run into mill race.

"Witness the hands and seals of the parties.

      (Sig)   "SARAH J. STERLING,  [SEAL]

              HUGH STERLING,    [SEAL]

              A. M. J. BURGAN,   [SEAL]

              W. J. BURGAN,     [SEAL]

              C. B. SHAFFER."    [SEAL]

This lease, as all oil and gas leases are, is dual in its nature. It grants or conveys first a license to drill or explore for oil and gas within the boundaries of the tract of land therein described; second, it gives the right of possession to so much of the surface of the tract of land as is necessary for the derrick and machinery used in drilling wells, for the tankage used in receiving the oil produced and for the pipes necessary to carry the oil away.

Covenants are frequently found in oil leases that relate only to the right to drill and covenants that relate only to the use of the surface. As oil is fugitive and is not found in all lands, the compensation to the lessor is almost always a royalty. It follows that all covenants to be performed by the lessee which relate to the right to drill or explore for oil are construed most strictly in favor of the lessor. Again, the fact that the lessor usually gets nothing out of his lease except the royalty it yields after oil is discovered by the drill, the presumption always is that a lease is made for the purpose of immediate development unless the contrary appears in the contract of the parties. But this rule that an oil lease is to be construed most favorably to the lessor has its limitations. When the lessee has faithfully performed all his covenants and has discovered oil in paying quantities and the lessor is receiving the royalty that the contract of lease contemplates, he cannot invoke this rule to aid him in dispossessing the lessee. The rule in its purpose is only a spur to compel the lessee to perform his covenant to drill and discover oil. Having fully performed his covenants and having thereby obtained a vested interest in all the oil in the leased premises be-

cause of his exclusive right to drill, he holds that interest as security against the lessor, as the grantee in a deed of conveyance holds the land conveyed against the grantor.

As said in the case of the Venture Oil Company v. Fretts, 152 Pa. 451:

"A lease of a right to mine for oil, etc., stands on different ground.   The title is inchoate and for purposes of exploration only until oil is found.   If it is not found, no estate vests in the lessee, and his title, whatever it is, ends when the unsuccessful search is abandoned.   If oil is found, then the right to produce becomes a vested right, and the lessee will be protected in exercising it in accordance with the terms and conditions of his contract."

Turning now to the facts in this case, we find that the lessee drilled four wells on Lease "A," that he drilled three wells on Lease "B," that he drilled five wells on Lease "C," that he drilled six wells on Lease "E," that he drilled five wells on Lease "F," and that he drilled eight wells on Lease "G," all of which produced oil in paying quantities, the royalty from which was received by the lessor in accordance with the terms of the respective leases.

It follows from these facts that the lessees had a vested interest in the oil in and under each of the tracts of land described in the six leases with the exclusive right to drill for the same.

This brings us to the second question: Has the defendant company or the lessees from whom it took its assignment surrendered, forfeited or abandoned the vested interest in the oil in said tracts of land and the exclusive right to mine the same?

There is no claim that the defendant company or its predecessors in title ever voluntarily surrendered their rights under said leases, and there is no evidence that they forfeited or abandoned these rights.

At the hearing no witnesses were examined in behalf

of the plaintiff. The plaintiff's whole case rests upon the averments of the bill that are admitted in the answer and that were admitted at the hearing by the defendant company's counsel. Among those admissions on the part of the defendant company we find none that it or its predecessors in title in the respective leases ever did anything or ever failed to do anything that under the covenants of the lease would work a forfeiture of its vested interest or be evidence that said interest had been abandoned. Nor was there any evidence offered or any admission made by the defendant company to show that the wells being pumped on the respective leases when the plaintiff's bill was filed were not producing oil in paying quantities, except in the case of Lease "E," of which we will speak later on. On the contrary, the plaintiff received the royalty of the oil produced from the pumping wells up to the time the bill was filed and thereby recognized the validity of the defendant's lease, at least so far as the pumping wells were concerned.

On Lease "E" the evidence shows there was a pumping well producing oil in paying quantities and that this well was injured in the latter part of the year 1912 by a flood and ceased to produce oil by reason of that injury, but the evidence also shows that since the injury the defendant company has been diligently engaged in an attempt to restore said well and that it has not abandoned said well as a producing well, but expects it to be restored as a well producing oil in paying quantities. Further, the plaintiff by a contract made with the defendant company on the 21st day of September, 1908, recognized the validity of the defendant's claim to operate said pumping wells.

This then brings us to what appears to be the real claim of the plaintiff, and that is that the defendant has, by the abandonment of the numerous wells that were no longer producing oil in paying quantities, lost its right to drill any new wells on any of the leaseholds and that its future operations must be confined to operating the

old producing wells which now produce oil in paying quantities, and that the new wells if they produce oil in paying quantities belong to her, and that the defendant company should account to her for all the oil which they produce. This claim in our opinion is not tenable. There is a provision in Lease "A" (and a similar provision in the other leases) which reads as follows:

"Second party agrees to commence the drilling of one well on the said 25 acres within 30 days from date above and prosecute the drilling of same with due diligence to completion and commence the drilling of a second well within 60 days from completion of first well, prosecute the drilling of second well with due diligence to completion or forfeit all of said land except 8 acres around the first well drilled and to commence the drilling of the third well within 60 days from completion of second well or forfeit all of said lease, except 17 acres around the first two wells drilled. A failure of the second party to comply with any of the requirements herein contained to render said lease null and void and to be of no binding force."

The condition here set out was fully met by the original lessees and the three wells completed in the time specified, and that provision cannot now be invoked for the purpose of curtailing the lessee's interest which vested by reason of the fact of his having fully and faithfully performed the agreement contained in this provision of the lease. The very fact that the lease provides how the extent of the lease may be reduced from 25 acres to 17 acres or to 8 acres negatives the idea that the extent of the lease can be reduced in any other way and implies that if the lessee drills the three wells in the time named and discovers oil, then the lease shall be valid and binding as to the whole 25 acres so long as oil is produced in paying quantities thereon. The plaintiff wants to read into the lease the provision:

"that if all the wells but one fail to produce oil in paying

quantities, then the lease shall become null and void and the lessee shall forfeit all of said land except eight acres around the one well that still produces oil in paying quantities."

To do this would be to make a new contract for the parties. By fully performing the covenants contained in the lease and discovering oil in paying quantities in the three wells that the lessee was required to drill on this lease, the lessee became vested with an interest in all the oil contained in the 25-acre tract covered by the lease, with the exclusive right to drill other holes if he thought he could not pump it all out through the holes he had already drilled; and there is no evidence in this case to show that the original lessee or the defendant company, his assignee, has ever surrendered, forfeited or abandoned that vested right. The abandonment of the wells that it no longer paid to pump was not an abandonment of the vested right to take the oil in and under the tract out through other holes.

We therefore are clearly of the opinion that the evidence in this case is wholly insufficient to show "that the title and right of possession to said six tracts of land described in said six oil and gas leases is now vested exclusively in the plaintiff, save only as to such occupancy as is reasonably incident to operating oil wells thereon now producing oil in paying quantities," and wholly insufficient to justify this court in granting the injunction prayed for and in turning the three new wells over to the plaintiff and requiring the defendant company to account to her for all the oil produced therein.

The court dismissed exceptions and a decree was entered dismissing the bill. Plaintiff appealed.

*Errors assigned* were various findings of fact and law and the decree of the court.

*S. S. Mehard,* with him *Robbin B. Wolf, McIlvaine & Clark,* and *Eugene Mackey,* for appellant.

*J. McF. Carpenter,* with him *Robert W. Irwin* and *R. W. Cummings,* for appellee.

PER CURIAM, January 5, 1914:

The decree appealed from is affirmed on the adjudication by the learned president judge of the Common Pleas.