479 A.2d 534

**Dante G. BERTANI, Receiver of B & R Lumber Company, and William G. Boyle, Executor of the Estate of Edgar W. Rugh and Ailsa P. Rugh, Assignees**

v.

**C.E. BECK and Amoco Production Company, Appellants.**

Superior Court of Pennsylvania.

Argued Nov. 30, 1983.

Filed June 15, 1984.

Reargument Denied Aug. 17, 1984.

Petition for Allowance of Appeal Denied April 4, 1985.

James R. Cascio, Somerset, for appellants.

James R. Mall, Pittsburgh, for appellees.

Before ROWLEY, WIEAND and HESTER, JJ.

WIEAND, Judge:

The decision in this case rests upon the interpretation to be placed upon paragraph 6 of an oil and gas lease covering 13,604 acres of land in Clinton and Centre Counties. The lease, negotiated by C.E. Beck, agent for Amoco Production Company (Amoco), and executed on October 26, 1977, required Amoco to pay an initial consideration therefor of $13,604. In addition, Amoco was to pay royalties consisting of one-eighth (⅛) of the net proceeds derived from extract-

ing and marketing certain enumerated minerals. Although the term of the lease was stated to be ten years, paragraph 6 provided:

*If operations for drilling are not commenced on the leased premises,* or on acreage pooled therewith as above provided, *on or before one year from this date, this lease shall then terminate as to both parties unless Lessee on or before the expiration of said period shall pay or tender to Lessor,* or to the credit of Lessor in Mellon Bank at Ligonier, Pennsylvania 15658 or any successor bank, *the sum of Thirteen Thousand, Six Hundred and Four Dollars ($13,604.00), hereinafter called the "delay rental" which shall extend for twelve (12) months the time within which drilling operations or mining operations may be commenced.* Thereafter, annually, in like manner and upon like payments or tenders the commencement of drilling operations or mining operations may be further deferred for periods of twelve (12) months each during the primary term. Drilling operations or mining operations shall be deemed to be commenced when the first material is placed on the leased premises or when the first work, other than surveying or staking the location, is done thereon which is necessary for such operations. (Emphasis added)

It is undisputed that neither drilling nor mining operations were commenced within the first year. It is also clear that a "delay rental" was not paid before the expiration of the first year.

The owner of the demised premises was B & R Lumber Company, a corporation owned by Ailsa P. Rugh (53.846%) and the Estate of Edgar Rugh, deceased (46.154%). On November 18, 1977, Dante G. Bertani became receiver of the corporation by agreement. Because the lease had been negotiated and executed on behalf of the corporation by Ailsa Rugh alone prior to appointment of the receiver, Bertani determined that he should obtain from the Court of Common Pleas of Westmoreland County a decree confirming the lease. This caused delay. While the confirmation

proceedings were pending, the first year of the lease expired without the commencement of drilling or mining by the lessee. The court, when it ultimately decreed confirmation, left it to the parties to make their own agreement regarding the uncertainty and delay which had been caused by Bertani's refusal to proceed without court confirmation. The corporation's interest in the lease was subsequently assigned to Ailsa Rugh and the Estate of Edgar Rugh, deceased, in shares consistent with their respective interests in the corporation. Continuing negotiations pertaining to the amount of delay rentals to be paid proved unsuccessful.

On or about November 1, 1979, Amoco tendered separate drafts to the lessors in the total amount of $20,405 as payment of delay rentals due under paragraph 6 of the lease agreement for the years 1978–79 and 1979–80. This amount reflected a credit for a delay of six months, which Amoco contended had been caused by the confirmation proceedings instituted by the receiver. The lessors refused this tender and insisted upon payment in full ($27,208) for two years' delay. When Amoco refused to pay the amount demanded, the lessors commenced an action in assumpsit to recover $27,208. Extensive discovery, which demonstrated the facts aforesaid, was followed by cross motions for summary judgment. The trial court concluded that Amoco was obligated by the terms of the lease to pay delay rental for two years and, therefore, entered summary judgment in favor of the lessors. Amoco appealed. We reverse.

A summary judgment may be granted under Pa.R. C.P. 1035(b)

if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

In determining whether summary judgment shall be entered, the following principles have application:

The moving party bears the burden of demonstrating that no genuine issue of material fact exists and that he is

entitled to judgment as a matter of law. *Thompson Coal Company v. Pike Coal Company*, 488 Pa. 198, 412 A.2d 466 (1979); *Weiss v. Keystone Mack Sales Inc.*, 310 Pa.Super 425, 456 A.2d 1009 (1983). In determining whether the moving party has met this burden, the court must examine the record in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences. *Thompson Coal Company v. Pike Coal Company, supra; Shacter v. Albert*, 212 Pa.Super. 58, 239 A.2d 841 (1968). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Thompson Coal Company v. Pike Coal Company, supra; Breslin v. Ridarelli*, 308 Pa.Super. 179, 454 A.2d 80 (1982). Summary judgment should be granted only in the clearest case, where the right is clear and free from doubt. *Thompson Coal Company v. Pike Coal Co., supra; Weiss v. Keystone Mack Sales, Inc., supra.*

*Pennsylvania Gas & Water Co. v. Nenna & Frain, Inc.*, 320 Pa.Super. 291, 297–298, 467 A.2d 330, 333 (1983). See: *Day v. Volkswagenwerk Aktiengesellschaft*, 318 Pa.Super. 225, 231, 464 A.2d 1313, 1316 (1983). In an action based upon interpretation of a lease agreement, where the terms are unambiguous, summary judgment is appropriate. See: *Pines Plaza Bowling, Inc. v. Rossview, Inc.*, 394 Pa. 124, 145 A.2d 672, *aff'g* 14 D. & C.2d 459 (1958). See generally: *Woytek v. Benjamin Coal Co.*, 300 Pa.Super. 397, 446 A.2d 914 (1982).

■ The unambiguous language of paragraph 6 established that the lease would terminate on October 26, 1977 unless drilling or mining commenced prior thereto or, in the alternative, Amoco paid prior thereto the sum of $13,604 as "delay rental." If neither of these events occurred, the lease was to terminate. In that event, the initial payment of $13,604 was forfeited, and neither party had any further obligation under the lease. The lease did not require Amoco to pay delay rentals. If it failed to do so, the only effect was a termination of the lease. After the lease had been

terminated, Amoco was not required to make any further payments. Therefore, the trial court was clearly in error when it caused judgment to be entered against Amoco for $27,208, representing "delay rental" for two additional years.

It is correct, of course, that Amoco attempted to revive the lease agreement by tendering the sum of $20,405, which it deemed a fair compromise of the dispute concerning delay and monies due. This tender, however, was rejected by the lessors. Consequently, the attempted revival of the lease was unsuccessful. The tender of $20,405 did not constitute either a promise to pay or an estoppel requiring future payment of monies under the defunct lease agreement.

In *Glasgow v. Chartiers Oil Co.*, 152 Pa. 48, 25 A. 232 (1892), the Supreme Court had occasion to interpret the following clause in an oil and gas lease:

Provided, however, that this lease shall become null and void and all rights hereunder shall cease and determine, unless a well shall be completed on the premises within one month from the date hereof, or unless the lessee shall pay at the rate of one hundred dollars monthly in advance for each additional month.

There, as here, the lessors argued that the language of the clause required the lessee to pay monthly "delay rentals." The Supreme Court held that the clause did not impose upon the lessee an obligation to make monthly payments. The Court said:

There is no express covenant, promise or undertaking by the lessee to be found anywhere in the agreement. A covenant to operate within a reasonable time might be implied from the nature of the instrument, but the lessee has been careful to make no express promise to operate the lease, or to do anything towards the development of the land. *If he does nothing, the penalty for his inaction is fixed. It is the forfeiture or loss of his rights under the agreement.* But, if he thinks it an object to do so, he may prevent the assertion of this forfeiture by

paying one hundred dollars in advance of the first day of the next month after the date of the contract, and, upon such payment, the right of forfeiture is postponed one month. This he may do month after month as long as he pleases, or until the end of five years. If, however, he puts down no well during the first month, and pays no money in lieu of it, his rights are at an end, and the lessor may assert the forfeiture.

. . . .

[The legal effect of the term] is to confer on the [lessee] the right to explore for oil on the tract described. If he does not exercise this right within one month, it is lost to him, unless he chooses to pay one hundred dollars in advance as the price of another month's opportunity to explore. If he does exercise it, and finds nothing, he is under no obligation to continue his explorations. If he explores and finds oil or gas, the relation of landlord and tenant or vendor and vendee is established, and the tenant would be under an implied obligation to operate for the common good of both parties, and pay the rent or royalty reserved. In this case, he did nothing in the way of development, and, after the payment of one hundred dollars per month for the delay, for a short time, he ceased to pay.

The [lessor] contends that, because [lessee] might pay under the terms of the contract, he may be compelled to pay. But payment was the means provided by the contract by which the exercise of the right of the lessor to assert a forfeiture could be postponed. If the lessee did not wish to postpone the exercise of such right, he had only to refrain from making the payment. . . . Unfortunately for the plaintiff in this case, he has no covenants on which to sue.

*Id.*, 152 Pa. at 51–52, 25 A. at 232 (emphasis added). The same interpretation has been given to similar forfeiture clauses in other leases. See: *Hays v. Forest Oil Co.*, 213 Pa. 556, 62 A. 1072 (1906); *Jackson v. American Natural Gas Co.*, 31 Pa.Super. 408 (1906); *McKee v. Colwell*, 7

Pa.Super. 607 (1898). Compare: *McMillan v. Philadelphia Co.*, 159 Pa. 142, 28 A. 220 (1893) (despite limitations on lessees' duty to pay, the language of the lease demonstrated clearly that lessees had undertaken an obligation to commence operations or pay).

The language of the agreement in the instant case is unambiguous. The facts, moreover, are undisputed. Neither the lease agreement nor Amoco's conduct was sufficient to create an obligation to pay delay rentals. Paragraph 6 of the lease was intended to confer upon Amoco the right to explore for the presence of minerals. If none were discovered, Amoco was free to allow the lease to be forfeited by the expedient of not paying a "delay rental." If Amoco wished to postpone the forfeiture, however, it could do so by paying a delay rental before the yearly period had expired. Paragraph 6 was not a covenant to pay "delay rental." It did not create a right in appellees to insist upon being paid delay rental. The option was vested in Amoco. When it did not make the payment provided in paragraph 6, the lease was terminated. Thereafter, it could be revived only by mutual agreement. That no such agreement was reached is undisputed.

Judgment reversed and now entered in favor of appellants.