Earl J. HITE and Bonita M. Hite, husband and wife, Frederick J. Hite and Karen A. Hite, husband and wife, Leroy G. Hite and Carol A. Hite, husband and wife, Robert M. Hite and Cheryl A. Hite, husband and wife, Leonard J. Buck and Patricia A. Buck, husband wife, Mary L. Hite, widow, Germain P. Hite and Jan M. Hite, husband and wife, John Myers, widower, Appellees

v.

FALCON PARTNERS, A Pennsylvania Business Trust and XTO Energy, Inc., Appellant

Appeal of Falcon Partners, A Pennsylvania Business Trust.

Superior Court of Pennsylvania.

Argued Sept. 13, 2010.
Filed Jan. 4, 2011.

---

**18.** Brayman also proffers that, because the court found PennDOT's procurement method to be illegal, its decision to permit the Erie County Project to proceed to completion under two-step DBBV amounted to allowing PennDOT to spend public funds pursuant to an illegal contract, resulting in *per se* irreparable harm. *See* Brief for Appellants at 23 (quoting *Shaeffer v. City of Lancaster,* 754 A.2d 719, 723 (Pa.Cmwlth.2000)). This argument pertains to the irreparable-harm prong of the standard for granting a preliminary injunction. As all six prerequisites must be satisfied for an injunction to issue, and as we have found that the no-public-harm requirement has not been met, we need not address Brayman's argument in this regard.

Michael Handler, Assistant District Attorney, Ebensburg, for appellant.

Calvin J. Webb, II, Ebensburg, for appellees.

BEFORE: FORD ELLIOTT, P.J., STEVENS, and SHOGAN, JJ.

OPINION BY STEVENS, J.:

This appeal stems from a dispute over several oil and gas leases, which culminated in the grant of summary judgment in favor of the Plaintiff/Appellee landowners. We affirm.

The leases, all of which are similarly worded, were originally entered into by Plaintiffs and Buffalo Valley, Ltd. They are either dated December 18, 2002, or October 30, 2003. In 2005, Buffalo Valley assigned its interest to MSB Leasing, which then assigned its interest to Defendant/Appellant Falcon Partners in 2007.

The leases grant and convey to the lessee "all the oil, gas, surface and Drilling Rights in, on and under" Plaintiffs' land. Leases at Paragraph 1. The term of each lease is stated as follows:

> 3. *Term.* Lessee has the right to enter upon the Property to drill for oil and gas at any time withinone [sic] (1) year from the date hereof and as long thereafter as oil or gas or either of them is produced from the Property, or as operations continue for the production of oil or gas, or as Lessee shall continue to pay Lessors two ($2.00) dollars per acre as delayed rentals, or until all oil and gas has been removed from the Property, whichever shall last occur.

*Id.* at Paragraph 3.[1]

Despite the passage of years since the leases were signed, Falcon has not taken any action to actually commence drilling on Plaintiffs' properties. Thus, instead of the royalties they would be earning if oil or gas was produced, Plaintiffs have merely received delayed rental payments of two dollars per acre per year. In light of Falcon's inaction, it is unsurprising that Plaintiffs were interested when they received offers from other gas companies to drill the land. With those other offers in hand, Plaintiffs sent certified letters of notification to Falcon on June 20, 2008 and June 22, 2008, inquiring whether Falcon wished to match the price, terms and conditions of such offers pursuant to the Right of Renewal clause.[2] Falcon did not respond. Thereafter, on December 11, 2008 and December 16, 2008, the Plaintiffs sent notice to Falcon declaring termination of the agreements as the result of Falcon's inaction, and demanding that Falcon record a release document in confirmation. Falcon refused, and the Plaintiffs instituted the actions currently before us.

The parties filed cross-motions arguing that they are, respectively and opposed to the other, entitled to summary judgment as there is no genuine issue as to any material fact and the interpretation of the leases is purely a matter of law. Thereafter, on January 6, 2010, the lower court granted Plaintiffs' motions for summary judgment, and denied Falcon's motion for summary judgment. Order filed 1/6/10. Praecipe for entry of judgment was granted on February 2, 2010, and Falcon immediately appealed.[3]

---

1. The use of this "term" clause to not only fix the primary term of the lease, but also provide for the payment of delay rental, is not typical of modern oil and gas leases. *Jacobs v. CNG Transmission Corp.,* 332 F.Supp.2d 759, 764–765, fn. 1, 766 (W.D.Pa.2004). Those functions are typically accomplished through the use of separate "habendum" and "delay rental" clauses. *Id.*

2. The leases contain a Right of Renewal clause which states:
   > If Lessors receive an offer to release the oil and gas, covering any portion of the Property described herein and becoming effective within six (6) months of the expiration of this agreement, Lessors hereby agree to notify Lessee immediately of offeror's name and the term offered. Lessee for thirty (30) days after receipt of such notice shall have the prior and preferred right and option to lease the oil and gas covered by the offer at the same price, terms and conditions specified in the offer. Failure of Lessors to provide such notice to the Lessee shall terminate any lease entered into between Lessors and such offeror.
   > Leases at Paragraph 17.

3. Falcon timely complied when directed to file Pa.R.A.P. 1925(b) Statement of Matters

In addressing this matter, we adhere to the well established standard for reviewing the lower court's grant of summary judgment which requires us to view the record in a light most favorable to Falcon, which will be considered the non-moving party since the lower court decided the cross-motions for summary judgment in Plaintiffs' favor. *Szymanowski v. Brace*, 987 A.2d 717, 721–722 (Pa.Super.2009). Further, while all doubts as to the existence of a genuine issue of material fact would normally be resolved against the moving party, here, since both parties sought summary judgment, they are in agreement that there are no genuine issues of material fact remaining. *Id.*, 987 A.2d at 722. We may affirm the lower court's grant of summary judgment in Plaintiffs' favor only where it is clear that they are entitled to a judgment as a matter of law. *Id.* "Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion." *Id.*

Also applicable to this lease dispute are the principles of contract and property law. *Jacobs*, 332 F.Supp.2d at 772.

> [A]n oil and gas lease reflects a conveyance of property rights within a highly technical and well-developed industry, and thus certain aspects of property law as refined by and utilized within the industry are necessarily brought into play. [*Daset Mining Corp. v. Industrial Fuels Corp.*, 326 Pa.Super. 14, 473 A.2d 584, 592 (1984) ]; [*Hutchison v. Sunbeam Coal*, 513 Pa. 192, 195 n. 1, 519 A.2d 385, 387 n. 1 (1986) ] (using the term "lease" with regard to the conveyance of mineral rights "is in some re-

spects a misnomer [because] what is really involved is a transfer of an interest in real estate, the mineral in place."). The Supreme Court has aptly observed that "the traditional oil and gas 'lease' is far from the simplest of property concepts." *Brown v. Haight*, 435 Pa. 12, 255 A.2d 508, 510 (Pa.1969). In the context of oil and gas leases, the title conveyed is inchoate and initially for the purpose of exploration and development. *Calhoon v. Neely*, 201 Pa. 97, 50 A. 967, 968 (Pa.1902); *accord Burgan v. South Penn Oil Co.*, 243 Pa. 128, 89 A. 823, 826 (Pa.1914) ("The title is inchoate, and for purposes of exploration only until oil is found."). If development during the primary term is unsuccessful, no estate vests in the lessee. *Id.* If oil or gas is produced, the right to produce becomes vested and the lessee has a property right to extract the oil or gas. [*Calhoon v. Neely*, 201 Pa. 97, 101, 50 A. 967, 968 (1902) ]; *Barnsdall v. Bradford Gas Co.*, 225 Pa. 338, 74 A. 207, 208 (Pa.1909) (an oil and gas lease that results in production "creates a corporeal interest in the lessee in the demised premises, and is not merely a license to enter and operate for oil and gas."). In such circumstances the lessee will be protected in accordance with the terms of the lease and will be required to operate the leasehold for the benefit of both parties. [*Venture Oil Co. v. Fretts*, 152 Pa. 451, 461, 25 A. 732, 734 (1893) ]; *Calhoon*, 50 A. at 968; *Burgan*, 89 A. at 826.

*Jacobs*, 332 F.Supp.2d at 772–773. Royalty-based leases are to be construed in a manner designed to promote the full and diligent development of the leasehold for the mutual benefit of both parties. *Id.*, 332 F.Supp.2d at 781.

Complained of on Appeal, and the lower court has responded with a Rule 1925(a) Opinion.

In the matter *sub judice*, we acknowledge that the parties' dispute is but one of many in a long line of cases involving the oil and gas industry in Pennsylvania—a fact which is hardly surprising, since the very first commercial oil well in the United States was drilled in Crawford County, Pennsylvania, in 1859. Since that time, countless landowners have contracted with oil and gas companies to reap the financial benefits of the resources hidden deep beneath their property. While the form of the leases created to memorialize such agreements has varied, the leases at issue in the matter currently before us are unusual. Specifically, the language pertaining to the one year primary term and the delay rental due on an annual basis, used in conjunction, is not typical, and, as we will explain, requires us to affirm the lower court's summary judgment in Plaintiffs' favor.

We do so with an acknowledgment that the features of oil and gas leases have evolved over time. Initially, the leases entered into by landowners and the companies seeking to extract the oil and gas beneath their land typically granted the lessee company the right to drill for the purpose of producing oil and gas for a definite, or primary term, and set forth the manner in which the landowner would be paid. The use of a definite term placed the lessee at a disadvantage, however, if production started late in the term of the lease, or extended beyond the term's end. *Jacobs*, 332 F.Supp.2d at 765, fn. 1, 786, fn. 15. As a result, leases began incorporating an option to renew, and eventually came to use a habendum clause which provided that the interest conveyed by the lease continued for a prescribed term of years, and "as long thereafter as" or "so long as" a specified product or products was obtained from the land in paying quantities, or some other specified activity continued. *Id.*, 332 F.Supp.2d at 765 fn. 1.

Such clauses were typically understood to establish a definite (or primary) term in which the lessee was permitted to develop the property, with an option for an indefinite secondary term permitting the lessee to reap the long-term value and return on the money spent developing the property during the primary term. *Id.*

Early lease forms also generally contained an expressed obligation on the part of the lessee to immediately develop the property or suffer forfeiture. *Jacobs*, 332 F.Supp.2d at 765, fn. 3. Even when such an obligation was not expressed, the courts recognized an implied covenant to develop the leasehold. *Id.; Jacobs v. CNG Transmission Corp.*, 565 Pa. 228, 240–243, 772 A.2d 445, 452–454 (2001) (*citing Aye v. Philadelphia*, 193 Pa. 451, 455–456, 44 A. 555, 555–556 (1899); *McKnight v. Manufacturers' Natural Gas Co.*, 146 Pa. 185, 204, 23 A. 164, 166 (1892); *Stoddard v. Emery*, 128 Pa. 436, 18 A. 339 (1889)). As a result, in conjunction with the use of a definite primary term and a habendum clause containing a "thereafter" provision, leases also began to incorporate "delayed rental" clauses, which relieved the lessee of the obligation to develop the property immediately upon entering into an agreement. *Id.*, 332 F.Supp.2d at 767 fn. 3.

▮ With their long history of use in the oil and gas industry, delay rentals provisions have a well-settled meaning. *Id.*, 332 F.Supp.2d at 785.

It is customary for parties to an oil and gas lease to agree that a minimum advance royalty shall be paid for the lessee's right to forego immediate development of the leasehold for production. Such advance minimum payments are in the nature of liquidated damages for the lessee's decision to forego production and are viewed as the consideration paid to the landowner in lieu of the royalty

that would be paid if production operations were to be undertaken immediately.

*Id.* 332 F.Supp.2d at 785 (citing *Hutchison*, 519 A.2d at 388). Typically, the clause in a modern oil and gas lease which provides for delay rental is known as the "drilling and rental clause," and is concerned with the requirements for maintaining the lease in effect during the primary term expressed by the habendum clause. *Id.*, 332 F.Supp.2d at 785 (citing William and Meyers, OIL AND GAS LAW, § 605) (emphasis added). *See also Glasgow v. Chartiers Oil Co.*, 152 Pa. 48, 25 A. 232 (1892) (The ability to postpone exploration and development of the property through the payment of a delay rental was construed to be limited to primary term of the lease.); *Bertani v. Beck*, 330 Pa.Super. 248, 479 A.2d 534, 535, 537 (1984) (Wherein the Court construed a delay rental clause in a lease with a ten year primary term as vesting in the lessee the option to pay an annual delay rental or forfeit the right to develop the leasehold. The delay rental was due annually during the primary term and the effect of each annual payment was to "extend for twelve months the time within which drilling operations or mining operations may be commenced.").

Thus, "from the early cases through contemporary times" courts have interpreted delay rentals to be "limited to the initial term of the lease." *Jacobs*, 332 F.Supp.2d at 785.

This understanding developed as a result of the industry's search for an appropriate means to limit the ultimate duration of an oil and gas lease. After the straight term lease proved unsatisfactory due to its tendency to place the lessee at a great disadvantage if production was achieved near the end or continued beyond the expiration date, initial experimentation resulted in the shorten-ing of the definite term, the introduction of what came to be known as the "unless" drilling clause with an obligation to pay for the right to delay production through the payment of a delay rental and the introduction of a surrender clause (which gave the lessee the ability to end his obligations on property that proved to be unproductive prior to the expiration of the definite term). 2 Summers, THE LAW OF OIL AND GAS § 289. Lessees then sought to craft a lease "whereby the lessee could extend the period of exploration as long as he considered it worth while to pay a delay rental thereon." *Id.* This was attempted by using a habendum clause that simply conveyed the premises "on the following conditions ...", one of which was the payment of a rental. This form became known as the "no term lease." *Id.* But the attempt to use this sort of lease was short-lived due to the intervention of the courts. *Id.* "One line of decisions held that, because the lease did not fix a time beyond which the lessee could not delay actual development and the payment of royalties, the alleged consideration for the lease, it was unenforceable against the lessor because of unfairness." *Id.* The other line of case "read into [the no term lease] an implied condition to the effect that the lessee could not indefinitely postpone development by payment of delay rentals, but was under a duty to drill upon the premises within a reasonable time, and if he failed to do so the lessor could, on proper notice, forfeit the lease for breach of the condition." *Id.*

*Id.*, 332 F.Supp.2d at 786, fn. 15.

Returning to the matter at hand, we examine the lower court's order finding in favor of Plaintiffs and against Falcon. In so ruling, the lower court indicated that "[a] lease will not be construed to create a

perpetual term unless the intention is expressed in clear and unequivocal terms." Order filed 1/6/10 (*citing Sterle v. Galiardi Coal & Coke Co.,* 168 Pa.Super. 254, 257–258, 77 A.2d 669, 672 (1951)). With regard to the leases before it, the court determined that:

> [T]he terms of paragraph 3, particularly to an unsophisticated landowner, indicate a one-year lease term within which time the lessor intended to accomplish certain things related to drilling, operating and producing oil or gas on the landowner's property. It is not controverted that the properties have sat idle for six to seven years. If the lease could be extended in perpetuity through the payment of $2.00 per acre per year, there would be little need for the parties to agree on a one-year lease term.

*Id.* Falcon disputes this, claiming that the leases should be construed to enable Falcon to maintain production rights indefinitely, so long as the delay rental payments are made. Falcon's brief at 11.

▮ As we noted above, delay rentals function to relieve the lessee of the obligation to develop the leasehold during the primary term of the lease. Thus, Paragraph 3 of the leases currently at issue sets forth a primary term of one year, and requires a two dollar delay rental, paid annually. As such, a single two dollar delay rental payment relieved Falcon of any obligation to develop the leasehold during the one year primary term. Once that one year primary term expired, however, the mere payment of delay rentals alone did not preserve Falcon's drilling rights.[4]

To find as Falcon urges, that it may pay delay rental indefinitely, thereby denying Plaintiffs the opportunity to reap the financial benefits of actual production, would be contrary to the decisions of our Courts, at odds with the presumed intention of the parties in executing the leases in the first place, and in stark contrast to the clear opinion of the courts of Pennsylvania that the obligation to pay delay rentals is intended to "spur the lessee toward development." *Jacobs,* 332 F.Supp.2d at 789 (*citing Penrose v. Penn Forest Coal Co.,* 289 Pa. 519, 137 A. 670, 671 (Pa.1927); *Marshall v. Forest Oil Company,* 198 Pa. 83, 47 A. 927 (1901); *Hill v. Joy,* 149 Pa. 243, 24 A. 293 (Pa.1892); *Ray v. Western Pennsylvania Nat'l Gas Co.,* 138 Pa. 576, 590, 20 A. 1065, 1066–1067 (1891)).

As the United States District Court explained in *Jacobs,* claims that leases could be extended beyond their fixed terms by the mere payment of delay rental were raised and rejected when fixed term leases came into general use in the 1890's, employing wording similar to that contained in the leases currently at issue.[5] *Jacobs,* 332 F.Supp.2d at 790 (*citing* 2 Summers THE LAW OF OIL AND GAS § 290). The courts rejected such construction as "inconsistent with the established rulings grounded in public policy considerations that under 'no term' leases a lessee could not postpone development indefinitely by a payment of delay rentals." *Id.,* 332 F.Supp.2d at 790 (*citing* 2 Summers THE LAW OF OIL AND GAS § 289, 290). *See also Western Penna. Gas Co. v. George,* 161 Pa. 47, 28 A. 1004, 1894 Pa. Lexis 630 (1894).[6]

---

**4.** If the lessee desired to enjoy the benefit of a longer period of permitted inaction, it should have drafted the leases to include a longer primary term.

**5.** Providing that the lessee would hold the premises for a number of years and thereafter

as long as oil and gas were found in paying quantities or the rental paid thereon.

**6.** *Western Penna. Gas Co.* involved a lease which granted the lessee the right to drill and operate a certain tract of land "for a during

Moreover, to find as Falcon suggests, that the leases have an indefinite term creating a fee simple determinable estate in the lessee, Falcon's brief at 10, (*citing Snyder Brothers, Inc. v. Peoples Natural Gas Co.*, 450 Pa.Super. 371, 676 A.2d 1226 (1996)), would provide the lessee with vested property rights for the mere payment of a delay rental, "a proposition which is inconsistent with the traditional construction of the property rights conveyed by an oil and gas lease." *Jacobs*, 332 F.Supp.2d at 791. As we noted previously:

> The initial title conveyed by an oil and gas lease is inchoate, and for the purposes of exploration only. *Calhoon*, [201 Pa. at 101], 50 A. at 968. **The lessee may perfect its inchoate title to a vested interest by bringing the property into production. At that juncture the lessee gains a fee simple determinable in the oil and gas,** and may continue to reap the benefit of his efforts in accordance with the terms and conditions of the lease. [*Brown v. Haight*, 435 Pa. 12, 17, 255 A.2d 508, 511 (1969)] (interpreting traditional habendum clause of oil and gas lease to convey fee simple determinable once production in paying quantities has occurred). **Defendant has failed to advance any case where the mere payment of a delay rental beyond the term of the lease has been held to create a vested corpo-**

the term of two years from the date hereof, and as much longer as oil or gas is found in paying quantities or the rental paid thereon." *Id.*, 28 A. at 1004. In construing this lease, the lower court concluded that:

> 4. To hold that the lessee can have and hold the premises for and during the term of two years and as much longer as the sixty dollars annual rental is paid thereon, is to convert the lease into a perpetual option to drill for oil and gas, when the apparent purpose of the lessor was to compel the development of his land within the period of two years.
>
> 5. The words "or rental paid thereon" in the habendum clause of the lease apply to the time during which the lessee could hold the lease (by payment of the rentals) without drilling, and that time, by the terms of the lease, is fixed at two years. If we ask the question, how much longer than two years shall the lessee hold the premises, we find the answer in the words "and as much longer as oil and gas is found in paying quantities." Stated negatively the lessee shall not have and hold the premises longer than two years unless oil and gas is found within two years in paying quantities, and he cannot hold it even two years without operating unless "the rentals are paid thereon." In other words, the lessee can hold the premises two years without oil and gas, if he commences a well in thirty days and finishes it in ninety days, "or the rental is paid thereon." But if oil or gas is found within the two years, he can hold it not only for the two years but as much longer as oil or gas continue to be found or produced in paying quantities.

*Id.*, 28 A. at 1004. In affirming this construction, the Pennsylvania Supreme Court advanced the following pertinent rationale:

> In other words, [the lessee] claims to have the right, on payment of this comparatively insignificant rental or penalty, to postpone indefinitely all operations for the development of the property, and thus defeat the expressed purpose of the parties, and render inoperative the principle covenants of its assignor. This is an extraordinary claim, and is based on a construction which makes a lease a mere option, and the so-called "rental" the price of it. The five words relied on to accomplish this result are found in and conclude the habendum clause of the agreement. The learned Judge of the Common Pleas thought these words did not warrant the construction contended for, and that they were applicable only to the definite term of two years within which it was manifestly intended by the parties that the property should be developed. He therefore held that the failure of the lessee and his successor to complete a well upon the premises within that term enabled the lessor to terminate the lease upon the expiration of it and in this conclusion we concur.

*Jacobs*, 332 F.Supp.2d at 790 (*citing Western Penna. Gas Co.*, 161 Pa. at 52, 28 A. at 1005).

**real hereditament** (such as in a coal lease that amounts to the sale of the coal in place). *Hummel v. McFadden*, 395 Pa. 543, 544, 150 A.2d 856, 861 (1959).

*Jacobs*, 332 F.Supp.2d at 791 (emphasis added).[7]

We therefore reiterate that in light of the traditional understanding in the oil and gas industry, and case law applicable to this subject matter, the terms of the leases limited the privilege of foregoing production through the payment of delay rental to the one year primary term enunciated therein. Thus, Falcon was permitted to delay production during the year long primary term of the leases by the tendering of a delay rental payment, but when that primary term ended and Falcon failed to commence production, the agreements expired.[8] We thus find no error in the lower court's decision to permit Plaintiffs to entertain other offers for production.

7. Falcon's reliance on *Snyder Brothers, Inc.* with regard to this issue is misplaced. In that case, a producing well *had been completed*, but when the lessee company refused to drill additional wells, the landowners prevented the company from entering onto the property, causing the company to sue. *Snyder Brothers, Inc.*, 676 A.2d at 1229. Appealing the lower court's decision in favor of the company, the landowners contended that the lease was void as it created an interest in land which violated the rule against perpetuities. *Id.*, 676 A.2d at 1230. The landowners specifically averred that wording of the lease's "term" clause (which granted the lessee the right to drill within ninety days of the signing of the these and "as long thereafter" as oil or gas was produced, or as operations continued for production, or as delay rental was paid) transformed the lease into a "no term" lease which was unenforceable under the law and violated the rule against perpetuities, which prohibits restraints on alienation or the fettering of the marketability of property over long periods of time by indirect restraints on alienation. *Id.* (citing *Estate of Mather*, 410 Pa. 361, 189 A.2d 586 (1963)).

For the forgoing reasons, we affirm the order of the lower court. Affirmed.

In addressing the landowners' claims, the Court concluded that the language of the term clause did not violate the rule against perpetuities because the rule did not apply to the lessee company's interest in the land (a fee simple determinable), which vested when it completed the single well on the property. *Id.* (citing *Higbee Corp. v. Kennedy*, 286 Pa.Super. 101, 428 A.2d 592 (1981)).

*Snyder Brothers* is distinguishable from the instant matter, however, where the Defendant/Appellants' interests have never vested because no exploration or production has occurred. *Jacobs*, 332 F.Supp.2d at 772 (citations omitted). *See also Pomposini v. Phillips Oil and Gas Co.*, 397 Pa.Super. 564, 580 A.2d 776, 780 (1990).

8. Even if we were to view Plaintiffs' acceptance of the two dollar per year per acre delay rental payments after the expiration of the primary term as implied extensions of Falcon's production rights, such extensions ended when Plaintiffs refused the delay rental payments in October 2008. Thus, under either scenario, Falcon's production rights have clearly expired.