J-A28008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOHN G. JULIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM E. HUNTLEY AND AUGUSTA | : | No. 632 MDA 2018 |
| L. HUNTLEY | : | |

Appeal from the Order Entered March 26, 2018
In the Court of Common Pleas of Susquehanna County Civil Division at
No(s):  2015-223 C.P.

BEFORE:  LAZARUS, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JANUARY 24, 2019**

John G. Julia appeals from the trial court's order denying his motion for summary judgment and granting the cross-motion of Appellees William E. Huntley and Augusta L. Huntley's (the Huntleys), their heirs, successors, and assigns, generally (the Huntley Heirs)[1] for summary judgment in this quiet title action involving subsurface oil and gas rights.  After careful consideration, we affirm.

---

[1] Although the appeal caption only lists William E. and Augusta L. Huntley as Appellees, they, in fact, are deceased, having died in 1948.  *See* Peter Karl Huntley Affidavit of Heirship, 1/27/14, at ¶¶ 3, 5.  The underlying quiet title action was brought against the Huntleys and their "Heirs, Successors, Assigns, generally, Executors, Executrixes, Administrators, Legatees, Devisees, grantees, and any [a]nd all other persons claiming by, through, from or under them or any [o]f them and all other persons interested in said property."  John G. Julia Complaint, Civil Action – Equity, No. 2015-223 C.P., filed 2/27/15.

In June 1931, the Huntleys entered into an oil and gas lease with Northeastern Development Company (Northeastern) on land the Huntleys owned in New Wilford Township, Susquehanna County (the property/premises). Under the lease agreement, Northeastern was granted the rights to extract oil and gas from the property for a seven-year period, and Huntley, as lessor, received 1/8th of the oil or gas or other minerals at the mines produced and saved from the premises. Six months later, in December 1931, the Huntleys conveyed this property, via deed, to Bernard B. Ames and his wife, Hazel L. Ames, specifically subject to the terms of the oil and gas lease with Northeastern. In the Huntley-Ames deed, William Huntley also included a reservation clause, which states:

> This conveyance is made subject to the terms, conditions and stipulation of a certain lease entered into by the said William E. Huntley with Northern Pa. Development Co.,[2] for oil and gas operation and production, and said <u>William E. Huntley expressly reserves for himself and his heirs one half of any and all royalties **and** income or return from any oil or gas which may be produced on or from the premises hereby conveyed</u>.

Huntley-Ames Deed, 12/19/31 (emphasis added). On July 31, 1933, Northeastern terminated its lease[3] with Huntley.[4]

---

[2] The court found that Northeastern Development Company, which was referenced in the Huntley lease, and Northern Pa. Development Co., referenced in the Huntley-Ames Deed, were the same entity.

[3] No oil or gas had been produced during the term of the Huntley-Northeastern lease.

[4] The parties to the Huntley-Ames deed are all deceased. ***See supra*** n.1.

In June 1963, Ames sold a portion of the property to Richard J. and Doris Anne Bartleson; he sold the remainder of the property to Lee Alan Dobson in March 1964. In 1972, Dobson and his wife, Ann C., sold their portion of the property to James G. and Marion J. McGinnis. In 1976, the McGinnises sold their portion to Walter Julia. In August 1999, Walter and Beverly Julia sold their property to Appellant, Julia.

On May 16, 2007, Julia entered into an oil and gas lease with Elexco Land Service (Elexco). Elexco assigned the lease to Southwestern Production Company (Southwestern) and, on December 7, 2011, Julia and Southwestern executed an amended and restated "paid-up" oil and gas lease in which fifty percent of the royalties from that lease were deemed payable to the heirs of Huntley by Southwestern. On February 27, 2015, Julia filed a quiet title action against the Huntley heirs, seeking an order declaring Julia the owner, in fee simple absolute, of the subject property and entitling Julia to the quiet and peaceful possession of the land, together with all rights to royalties of the oil and gas in, under, or upon the property. In the alternative, Julia sought declaratory relief that he has the sole right to 100% of the oil and gas royalties from the property.[5]

---

[5] Southwestern has been withholding 50% of the oil and gas royalties from the property and placing them in a trust during the pendency of this quiet title action.

On August 4, 2017, Julia filed a motion for summary judgment; the Huntleys/Huntley Heirs filed a cross-motion for summary judgment on September 5, 2017. On November 3, 2017, the court granted summary judgment in favor of the Huntleys/Huntley Heirs and denied Julia's motion. On November 13, 2017, Julia filed a motion for reconsideration. On November 27, 2017, the court granted Julia's motion for reconsideration and vacated its November 3, 2017 order granting summary judgment in favor of the Huntleys/Huntley Heirs.[6] On March 26, 2018, the court entered an order denying Julia's summary judgment motion, granting the Huntleys'/ Huntley Heirs' cross-motion for summary judgment and finding that the reservation of rights in the Huntley-Ames deed requires Julia to share the oil and gas proceeds on the property with the Huntley heirs. The court's order specifically sets forth the distribution of royalties and income or return from any oil and gas produced as follows:

- [The Huntleys/ Huntley Heirs] are entitled to 31.25%[7] of all royalties and income or return from any oil and gas produced that was paid or will be paid by SWN Production Co. (Southwestern) on account of the interests payable for land of John G. Julia subject to this [c]ourt

_____

[6] The court corrected its original order which incorrectly determined that the lease term was seven years, when in fact it was ten years.

[7] In July of 2015 and April, July and August 2016, the trial court, sitting in equity, entered default judgments in favor of Julia and against several defendants, Huntley Heirs, giving Julia possession of the property and deeming extinguished the defendants' rights, title and interest to the Huntley reservation. The total percentage of royalties and income or return from those heirs totaled 18.75%.

proceeding. The percentages and parties to receive payments are as follows:

- o John G. Julia – 68.75%

- o Heidi Marshall – 6.25%

- o Elizabeth Marshall Knowles – 6.25%

- o Peter Karl Huntley – 6.25%

- o Hazel Huntley Nelson Estate – 6.25%

- o Gertrude Huntley Estate – 6.25%

Trial Court Order, 3/26/18.[8] Julia filed a timely notice of appeal. He presents the following issue for our review:

> Whether the lower court abused its discretion and committed an error of law in interpreting a reservation clause in the deed from Huntley to Ames inconsistent with the law and as a result determined that Defendants/Appellees were entitled to royalties under the current oil and gas lease between Southwestern Production Co. and the Appellant, John G. Julia.

Appellant's Brief, at 3.

> The well[-]established standard for reviewing the lower court's grant of summary judgment requires the appellate court to view the record in a light most favorable to the appellant, which will be considered the non-moving party if the lower court decided the cross-motions for summary judgment in appellees' favor. Further, while all doubts as to the existence of a genuine issue of material fact would normally be resolved against the moving party, if both

_____

[8] The order also stated that if any party to the litigation was paid money associated with the royalties and income or return from any oil and gas that had been produced on or from the premises from the Huntley-Ames chain of title, to which they are not entitled pursuant to this order, they must pay it to the proper party. Order, 3/26/18, at ¶ 4. Finally, Southwestern was ordered to produce a full accounting to the parties "for all payments made, or retained, for the interest, lease, or agreement between S[outhwestern] and John G. Julia for lands subject to th[e] suit." *Id.* at ¶ 5.

- 5 -

parties sought summary judgment, they are in agreement that there are no genuine issues of material fact remaining. The appellate court may affirm the lower court's grant of summary judgment in appellees' favor only where it is clear that they are entitled to a judgment as a matter of law. The appellate court's scope of review of a trial court's order granting or denying summary judgment is plenary, and the appellate court's standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Hite v. Falcon Partners*, 13 A.3d 942, 945 (Pa. Super. 2011) (citations omitted).

Julia argues that the Huntley-Ames deed only reserved one half of the *royalty payments* from the oil and gas produced, not one-half of the oil and gas itself. Specifically, Julia claims that the language in the Huntley-Ames deed reserved only royalties under the then-existing Huntley-Northeastern oil and gas lease, and that once that lease was terminated, any oil and gas rights reverted to the then-owner, and any subsequent owners, of the land. Accordingly, as a subsequent owner of Ames, Julia claims he has the sole oil and gas rights to the property.

The Huntleys/Huntley Heirs, on the other hand, contend that the reservation of oil and gas royalties was intended to survive the Huntley-Northeastern lease, as specifically referenced in the deed's reservation clause. Thus, the reservation clause applied to not only the named lease, but also any other present or future leases or other rights in the property.

It is well-established that an oil and gas lease is in the nature of a contract and is controlled by principles of contract law. *T.W. Phillips Gas &*

*Oil Co. v. Jedlicka*, 42 A.3d 261, 267 (Pa. 2012). Accordingly, it must be construed "in accordance with the terms of the agreement as manifestly expressed, and '[t]he accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties, determines the construction to be given the agreement.'" *Id.* (citation omitted). Moreover, royalty-based leases are to be construed in a manner designed to promote the full and diligent development of the leasehold for the mutual benefit of both parties. *Hite v. Falcon Partners*, 13 A.3d 942 (Pa. Super. 2011) (citing *Jacobs v. CNG Transmission Corp.*, 332 F. Supp. 2d 759, 789 (W.D. Pa. 2004).

> [A]n oil and gas lease reflects a conveyance of property rights within a highly technical and well-developed industry, and thus certain aspects of property law as refined by and utilized within the industry are necessarily brought into play. The Supreme Court has aptly observed that "the traditional oil and gas 'lease' is far from the simplest of property concepts." In the context of oil and gas leases, the title conveyed is inchoate and initially for the purpose of exploration and development. If development during the primary term is unsuccessful, no estate vests in the lessee. If oil or gas is produced, the right to produce becomes vested and the lessee has a property right to extract the oil or gas. In such circumstances the lessee will be protected in accordance with the terms of the lease and will be required to operate the leasehold for the benefit of both parties.

*Jacobs v. CNG Transmission Corp.*, 332 F. Supp. 2d 759, 772-73 (W.D. Pa. 2004) (internal citations omitted).

With regard to the Huntley-Ames deed, we note that "[a]s with any question of law, the Superior Court . . . reviews the trial court's construction of a deed *de novo*." *Murphy v. Steve Karnek*, 160 A.3d 850, 860 (Pa. Super.

2017). The court discerns the parties' intent by looking to the language of the deed. *Id.* Moreover, a reservation is the creation of a right or interest that did not previously exist; but if the thing or right exists at the time of conveyance, the deed's language is treated as making an exception. *Ralston v. Ralston*, 55 A.3d 736, 741 (Pa. Super. 2012).

Here, the language of the relevant clause in the Huntley-Ames deed states that "William E. Huntley expressly reserves for himself and his heirs one half of any and all royalties and income or return from any oil or gas which may be produced on or from the premises hereby conveyed." The clause is not ambiguous. If Huntley had intended to limit the reservation clause to the lease with Northeastern, he could have included language reflecting that intent. By intentionally placing the word "and" between the two phrases "one half of any and all royalties" **and** "income or return from any oil or gas," Huntley meant to reference circumstances *in addition to* the lease, i.e., royalties **and** oil and gas rights.[9]

Order affirmed.

---

[9] Where there were no other leases or agreements in effect or pending at the time Huntley executed the deed with Ames, the reservation could only be referencing future leases or agreements. Accordingly, because the oil and gas lease between the Huntleys and Northwestern existed before the conveyance to Ames, the Huntley-Ames deed reserved *both* the terms of the lease and 50% of any other oil or gas proceeds on the land for himself and his heirs.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>01/24/2019</u>